Margaret GATES et al.

v.

James R. SCHLESINGER et al.

Civ. A. No. 1864–73.

United States District Court,
District of Columbia.

Oct. 10, 1973.

Richard B. Wolf, Institute for Public
Interest Representation, Washington, D.
C., for plaintiffs.

Harold H. Titus, U. S. Atty., Arnold
T. Aikens, Peter Reilly, Asst. U. S.
Attys., Washington, D. C., for defendants.

MEMORANDUM

AUBREY E. ROBINSON, Jr., District Judge.

Plaintiffs herein seek a Preliminary
Injunction requiring Defendant officials
of the Department of Defense to open to
the public a meeting of the Defense Ad-

visory Committee on Women in the Services (DACOWITS) now scheduled to be held October 14–18, 1973 in Orlando, Florida. Plaintiffs contend that the Federal Advisory Committee Act (5 U. S.C. App. I, P.L. 92–463) (the Act) requires that the DACOWITS meeting be open to the public. The Court agrees that Plaintiffs have made the requisite showing at this stage of the proceedings to warrant the issuance of a Preliminary Injunction.[1]

The Act, Section 10(a)(1), expressly requires that "each advisory committee meeting shall be open to the public." Defendants have based their decision to close the working sessions of the DACOWITS meeting on the exception to this open meeting requirement contained in Section 10(d) of the Act. That exception, as relevant here, provides that meetings may be closed when an appropriate authority determines that the meeting is "concerned with matters listed in section 552(b) of Title 5." 5 U.S. C. § 552(b) lists the matters exempted from disclosure under the Freedom of Information Act. The specific exemption claimed as applicable here is § 552(b)(5) for "inter-agency or intra-agency memorandums or letters. . . . "

The Assistant Secretary of Defense (Manpower and Reserve Affairs) has determined that:

These working sessions involve the exchange of verbal information and proposals between the Directors of the women's military components which, if written, would fall within the exemption in clause (5) of Section 552(b) of Title 5, United States Code.[2]

In a supporting affidavit opposing the present motion for Preliminary Injunc-

tion, the Assistant Secretary has elaborated on the above determination.

These sessions involve debate and an exchange of views on policies affecting women in the services . . .
. . . (T)he women Directors of each of the women's military components are present as a source of information to the Committee members. The women directors are asked many questions by the Committee members as to what real problems currently are for women in the military. In answering those questions, the women Directors discuss with the Committee internal views and proposals which, if written, would fall within the exception clause (5) of section 552(b) of Title 5, United States Code, . . . [3]

The Court has several difficulties with Defendants' position. First of all, the question arises whether exemption 5 of the Freedom of Information Act is available for matters discussed by or before an advisory committee. The exemption applies only to *inter-agency* or *intra-agency* letters or memoranda. Essential to Defendants' case, then, is a finding either that the Advisory Committee is itself an "agency" or that it is within an "agency" of the Defense Department for purposes of the Federal Advisory Committee Act and the Freedom of Information Act. The Court cannot make such a finding, indeed, its present conclusion is to the contrary.

The Federal Advisory Committee Act utilizes [4] the definition of agency contained in the Administrative Procedure Act, 5 U.S.C. § 551(1), which is applicable also to the Freedom of Information Act. It is significant that the Federal Advisory Committee Act contains a separate and distinct definition

1. Virginia Petroleum Jobbers Assn. v. F. P. C., 104 U.S.App.D.C. 106, 259 F.2d 921 (D. C.Cir.1958).

2. Determination Under Federal Advisory Committee Act, September 17, 1973, William K. Brehm, Assistant Secretary of Defense (Manpower and Reserve Affairs). Plaintiffs Exhibit A.

3. Affidavit of William K. Brehm, Assistant Secretary of Defense (Manpower and Reserve Affairs), dated October 9, 1973 (filed October 10, 1973) at 3–4.

4. Federal Advisory Committee Act, 5 U.S.C. App. I § 3(3).

of an "advisory committee", thus supporting the proposition that an advisory committee is not an "agency". Further support for this proposition is found in *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1073 (1971), a Freedom of Information Act case wherein the Court of Appeals said

. . . (T)he APA apparently confers agency status on any administrative unit with substantial independent authority in the exercise of specific functions.

It is clear on the present record that the role of DACOWITS in the Department of Defense is advisory only and that it possesses no "substantial independent authority." The Court concludes that DACOWITS is not an "agency" and that matters before it are, therefore, not "inter-agency" affairs within the meaning of the applicable statutes.

[2, 3] Defendants contend that DACOWITS "is functioning as a part of the Department of Defense . . ."[5] This argument, of course, can be made for any advisory committee, for by its very nature an advisory committee is considering matters and offering recommendations which will ultimately be presented to government officials for final policy decisions. Defendants claim DACOWITS is "unique from other advisory committees"[6] because of "the presence of the women Directors, who exchange policies and proposals internal to the Department of Defense with Committee members."[7] The Court finds nothing unique in this. Indeed, it would be surprising if the situation were otherwise, with an agency allowing its advisory committee to meet in a vacuum, with little or no information or dialogue to guide its deliberations. Yet the exchange of information does not make an advisory committee "part of" its government agency. The committee is not an internal organ, but again by its very nature, is a group of "outsiders" called upon because of their expertise to offer views and comments unavailable within the agency. Defendants would liken advisory committees to professional consultants. Yet consultants generally operate by contract in a subordinate and confidential role. Whatever may be the status of consultants' reports under the Freedom of Information Act,[8] Congress has expressly determined in the Federal Advisory Committee Act that Advisory Committee reports and functions are *not* generally confidential. The Court is not persuaded, therefore, that the analogy to professional consultants is sound. Thus Defendants' argument that the Advisory Committee is within the Defense Department, and that matters before it are therefore "intra-agency" cannot be accepted here. If the matters coming before an advisory committee are neither inter-agency nor intra-agency affairs, exemption 5 of the Freedom of Information Act is by its terms unavailable as justification for the closing of the DACOWITS meetings here in question.

It might well be argued that the statute requires only that the Advisory Committee meeting be "concerned with" exempt matters. Yet it is hard to imagine an advisory committee that would not be concerned with some aspects of inter-agency or intra-agency affairs. To allow the "concerned with" language to be so broadly construed would allow the sponsoring agencies to close all advisory committees to the public by placing some "internal" matters on the agenda. Such an approach would clearly fly in the face of Congressional intent.

[4] Congressional intent and the policy of the Federal Advisory Committee Act underlie the result thus reached. Congress was concerned with the proliferation of unknown and sometimes secret "interest groups" or "tools" employed to promote or endorse agency policies. Congress established openness to

---

5. Brehm Affidavit, at 4.

6. Id.

7. Id.

8. See *Soucie v. David*, 145 U.S.App.D.C. 144, 155 n. 44, 448 F.2d 1067, 1078 n. 44, Wu v. National Endowment for Humanities, 460 F.2d 1030, 1032 (5th Cir. 1972).

public scrutiny as the keystone of the Advisory Committee Act. Arguments that public participation and disclosure would inhibit debate and the frank expression of views were heard and rejected by Congress.[9] An exception was created, however, for matters truly confidential by incorporating by reference the protection offered by the Freedom of Information Act for military and trade secrets, personal data on individuals, and the like. The availability of each exemption in the Freedom of Information Act must be measured by its own terms, however. In the circumstances of this case, the Court finds exemption 5 inapplicable by its terms and irreconcilable by result with the very purpose of the Federal Advisory Committee Act.

■ Beyond this major barrier, the Court notes several other difficulties with Defendants' position. Assuming for the moment the availability of exemption 5 of the Freedom of Information Act, it is now well established that a claimed exemption under the Freedom of Information Act must be supported by substantial justification and explanation of the basis for the claim, not merely by conclusory assertions.[10] While the Advisory Committee Act does not contain the same express provision of the Freedom of Information Act placing the burden of proof on the agency to sustain its action, this Court is of the view that the underlying policy considerations are identical and that the burden of proof should be comparable. In this present case the Government has offered only conclusory statements to justify its position.

Further, cases under the Freedom of Information Act also require that where portions of some documents may be exempt from disclosure, the non-exempt portions are to be disclosed where feasible.[11] The burden of showing unfeasibility is also on the Government. Again, by like reasoning, the Government should bear the burden of showing specifically that all sessions of an advisory committee meeting should be closed.

Lastly, the matters before the upcoming DACOWITS meeting will apparently be mostly oral in presentation and discussion. The Freedom of Information Act was originally designed to refer to written records rather than oral discussions. Some reconciliation is necessary with the substantially oral nature of the advisory committee function. It may well be that oral discussions may be construed as written documents for the purposes of applying the Freedom of Information Act exemptions to the Advisory Committee Act. Even if that is assumed, however, the subject matter of the discussions must still be shown to fall within one of the specific classes of information exempted from disclosure. Upon all of these legal considerations, the Court finds that Plaintiffs have demonstrated the required likelihood of success on the merits.

■■ With regard to the injury to be suffered by the Plaintiffs, it is well-established that acts by Government agencies in derogation of statutory rights of the public or certain individual members of the public can constitute irreparable injury.[12] In the circumstances of this case, attendance at the upcoming meeting of DACOWITS,

9. See especially 118 Cong.Rec. S14644 at S14649 (daily ed. September 12, 1972, (Remarks of Senator Percy). See generally 118 Cong.Rec. H4275–86 (daily ed. May 9, 1972); 118 Cong.Rec. H8454–57 (daily ed. September 18, 1972); 118 Cong.Rec. S15285–86 (daily ed. September 19, 1972); 118 Cong.Rec. H8610–11, (daily ed. September 20, 1972), H.R.Rep.No.1017, 92nd Cong., 2nd Sess., U.S.Code Cong. & Admin.News p. 3491 (1972).

10. Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973).

11. Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578 (1970).

12. See, e. g. McLean Gardens Residents Association, Inc. v. National Capitol Planning Commission, 4 E.R.C. 1708 at 1713 (D.D.C. 1972). Cf. Keith v. Volpe, 352 F.Supp. 1324 (C.D.Cal.1972); Lathan v. Volpe, 455 F.2d 1111, 1116 (9th Cir. 1971).

found above to be their right under the Advisory Committee Act, will be permanently lost to Plaintiffs if an injunction is not issued. The Court finds no injury to Defendants in being obliged to conform to the open meeting requirement imposed by statute. Further, the public interest will be best served by requiring strict compliance with the letter and spirit of the Federal Advisory Committee Act. Plaintiffs have requested an injunction requiring that they be allowed to "participate" in the DACOWITS meeting as well as to attend as observers. Plaintiffs have not pointed out, however, any statutory language creating a right of public participation in advisory committees, and the Court can find none. The Court will order that the meeting be open to the public as observers. Under § 10(a)(3) of the Advisory Committee Act, interested persons may "attend, appear before, or file statements with" an advisory committee, subject to reasonable regulations. The proposed regulations of the Office of Management and Budget on Advisory Committee Management (38 F.R. 2306, et seq., January 23, 1973) seem reasonable in this regard. The Court will not order more at this stage of the proceedings. Neither will the Court enter Orders proposed by Plaintiffs which speak in terms of future meetings or future claims of exemption 5 for DACOWITS meetings. Such provisions are inappropriate at this preliminary stage of the proceedings.

This is apparently a case of first impression under the Federal Advisory Committee Act. Because of this, although the written record herein is sparse,[13] the Court has devoted substantial effort in the time available to exploring the issues herein. The Court finds that the policy of the Advisory Committee Act is reflected clearly in its legislative history although the mechanics of implementing the exemptions therein does require exploration in this and undoubtedly, later cases. This Court is distressed, however, that the penchant for unjustified Government secrecy repeatedly evidenced in cases under the Freedom of Information Act seems to be present here. This proceeding, of course, remains in the preliminary stages, and Defendants will have the opportunity should this case come on for full disposition on the merits to convince the Court that the claims of exemption here proffered are in fact justified. An appropriate Order will be entered.

13. (A) This matter was brought on for hearing on shortened notice to counsel for Defendants.

(B) The United States Attorney's Office was notified on October 4 of the scheduled October 10 hearing date. Defendants thus did not have the full ten days allowed by the Rules for response to the present motion, and were, for that reason, excused from filing a written opposition.

(C) Nevertheless, the time frame in which the case developed necessitated prompt resolution, yet was not so urgent as to justify an ex parte presentation nor a Temporary Restraining Order.

(D) Any difficulty caused by this time sequence, however, must be imputed to Defendants. Though on notice since last Spring of Plaintiffs interest in DACOWITS, and particularly in attendance at the upcoming October meeting, Defendants avoided informing plaintiffs that the meeting would be closed until October 1, 1973. This action was filed October 3, 1973.