# Constitutionality of the Federal Advisory Committee Act

Without reaching definitive conclusions, this memorandum considers three constitutional questions raised by the Federal Advisory Committee Act.

First, is it within Congress's constitutional powers to regulate advisory committees in general and presidential advisory committees in particular?

Second, even if Congress can regulate advisory committees, may it regulate those committees giving advice to the President without violating the separation of powers?

Third, even if Congress may regulate those committees giving advice to the President, may the President except certain committees from certain regulations because of executive privilege?

December 1, 1974

MEMORANDUM

## I. Outline

Is the Federal Advisory Committee Act unconstitutional?

1. Is it beyond Congress's power to legislate?

    a. Not as to committees created or funded by Congress.

    b. Not as to agencies created by Congress in their use of advisory committees.

    c. Perhaps, as to private committees advising the President generally.

    d. Most likely, as to private committees advising the President about a matter expressly vested in the executive, e.g., pardoning.

    e. No case law on point.

        i. Trend is to find almost anything within the scope of Congress's power to legislate.

2. Does the Act unconstitutionally violate the separation of powers?

    a. Yes, because it attempts to regulate a power impliedly vested exclusively in the President—the power to seek and obtain advice where he wishes.

        i. Argument by analogy from *Myers*.

    b. The Act limits the advice the President will be able to receive.

    c. Such a limitation impinges on the executive's inherent power.

        i. The limitation is unconstitutional no matter what the subject of the advice is.

    d. The power to limit committees' advice is not constitutionally distinguishable from the advice from any person.

    e. Subordinates to the President exercising powers delegated to them may also be protected.

3. Certain committees may be relieved from certain requirements of the Act on the basis of executive privilege.

    a. Supreme Court has acknowledged the existence of executive privilege.

    b. The privilege should prevail against an unparticularized call for publicizing the contents of a meeting.

    c. Executive privilege would not void the Act but merely relieve some committees of some requirements—notably the requirement that the meeting be open.

        i. Question as to the exemption in the Act itself for keeping meetings closed.

    d. Executive privilege might be claimed with regard to meetings of even committees created by Congress.

    e. Courts' dislike of exemption 5 under the FOI Act might augur poorly for the executive privilege claim unless rarely invoked.

## II. Text

The Federal Advisory Committee Act, Pub. L. No. 92-463, 86 Stat. 770 (1972) (codified at 5 U.S.C. app. I (Supp. II 1973)), regulates advisory committees "established or utilized by the President" as well as those established or utilized by agencies and those established by statute or reorganization plan.

Three separable, if not altogether distinct, constitutional questions are raised by the Act. First, is it within Congress's constitutional powers to regulate advisory committees in general and presidential advisory committees in particular? Second, even if Congress can regulate advisory committees, may it regulate those committees giving advice to the President without violating the separation of powers?

Third, even if Congress may regulate those committees giving advice to the President, may the President except certain committees from certain regulations because of executive privilege?

## A.

Whatever power Congress has to regulate advisory committees would seem to stem from the Necessary and Proper Clause. Moreover, to the extent that Congress creates an advisory committee by statute (e.g., the Air Quality Advisory Board, 42 U.S.C. § 1857e), there would seem no question as to its power to regulate its existence or the means by which it functions. It would also seem justified for Congress to regulate committees not created by it, but which are funded by its appropriations, for it would seem within Congress's power to insure that committees utilizing its monies be constituted and function in accord with its regulations. Most advisory committees, as defined by the Act, would presumably fit within these two categories. Nevertheless, private committees utilized by the government for advice without any form of compensation would not be covered (e.g., the ABA Committee on the Federal Judiciary). To the extent that such committees were utilized by statutory agencies, again Congress would seem to have the power to regulate, not the committees themselves, but the means by which they might advise agencies created by Congress. That is, it would be within Congress's power to regulate the means by which agencies created by it might be advised, so as to diminish the likelihood of private rather than public interests being served by its creations.

Still, however, private committees advising the President would not be within these theoretical frameworks, and thus it might be argued that the Act's attempt to regulate such committees is beyond Congress's power. The counterargument, and it is not without force, is that to the extent that the advice relates to the execution of laws passed by Congress, Congress has an interest, and consequently a power, in seeing that advice concerning the administration of its laws is given in such a manner as to lessen the likelihood of private interests being served. As for private advisory committees, not funded by Congress, advising the President on matters entrusted solely to him by the Constitution, there would seem no justification for congressional regulation of the manner of their giving advice to the President.

Authority for the proposition that regulation of presidential advisory committees is beyond the powers of Congress to legislate is very meager. Courts rarely find laws unconstitutional solely on this basis, and then only with difficulty. *See, e.g.*, *Oregon v. Mitchell*, 400 U.S. 112 (1970). The tendency, and especially the modern tendency, is to read broadly the power of Congress to legislate.

## B.

Even if the regulation of advisory committees generally and presidential advisory committees in particular is within the subject area of Congress's power to legislate, that regulation might be unconstitutional as a violation of the separation of powers. Thus, in *Myers v. United States*, 272 U.S. 52 (1926), the Supreme Court held unconstitutional a law requiring the President to obtain the approval of the Senate to remove an officer appointed by him with the advice and consent of the Senate. This requirement was considered to violate the separation of powers between the Executive and Legislative Branches. So also in *Ex parte Garland*, 71 U.S. (4 Wall.) 333 (1867), and *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1872), the Supreme Court struck down congressional enactments which tended to undercut the effect of presidential pardons as unconstitutional infringements on executive powers.

Most struggles between the Executive and Legislative Branches do not result in court decisions, often because they are considered political questions, so again case authority for the unconstitutional legislative infringement of the Executive Branch is meager. Both *Garland* and *Klein* dealt with restrictions on an express presidential power and hence are distinguishable from the Federal Advisory Committee Act which, at best, limits an implied right to unrestricted advice. *Myers* involved a power implied by the words of Article II, Section 1, Clause 1, that the executive power shall be vested in a President, and the words of Article II, Section 3, that the President shall take care that the laws be faithfully executed. While *Myers* has been severely limited by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Wiener v. United States*, 357 U.S. 349 (1958), it still remains true that removal of executive officers, at least those appointed by the President with the advice and consent of the Senate, cannot be restricted or regulated by Congress.

The Federal Advisory Committee Act regulates, as well as other committees, committees which advise the President, and thereby restricts to some degree his ability to seek and obtain advice. The restrictions, indeed, may be great if meetings must be open to the public (*id.* § 10(a)(1)). *See Gates v. Schlesinger*, 366 F. Supp. 797 (D.D.C. 1973) (suggesting that exemption 5 of the Freedom of Information Act—dealing with interagency memoranda—is not available as an exemption from the requirement to have open meetings under the Federal Advisory Committee Act). *See also Nader v. Dunlop*, 370 F. Supp. 177 (D.D.C. 1973) (following *Gates*). Or the restrictions may be fairly minor—e.g., charter requirements (FACA § 9(c)) and requirement of a federal employee attending all meetings (*id.* § 10(e)). In any case, these restrictions may be presumed to limit the ability of the President to receive advice from whom he seeks it, for private committees faced with certain of these requirements might well decline to become involved in an advisory capacity with the President, thus limiting the President's ability to inform himself.

Opposed to this restriction and consequent limitation of the power to seek and obtain advice would be the implied power to seek and obtain advice from whomever the President deemed necessary in order to faithfully execute the laws. This would be a power lodged exclusively and inherently in the Executive Branch. While inherent executive powers may be strictly construed when they conflict with congressional enactments, *cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 639–40 (1952) (Jackson, J. concurring), certain powers must exist inherently in an executive in order for him to execute. In *Myers* that was understood to include the power to remove officers under his direction, for unless he could remove them, they would not be under his direction. In *United States v. Nixon*, 418 U.S. 683 (1974), the Court recognized an inherent executive power to keep confidential the discussions of persons attempting to decide questions. Again, the discussion by the court of the practical considerations involved reinforces the idea that in order to fulfill the duties of the executive, certain powers are necessary. The same compelling practical considerations suggest that the power to seek advice anywhere is also such an inherent power of the Executive. To the extent that the Federal Advisory Committee Act restricts that power it would be void.

It is arguable perhaps that the subject about which the President or his agency is receiving advice should have some bearing on the ability of Congress to regulate the advice. Thus, where the advice bears on a power granted expressly to the President, Congress would have the least justification for regulation. Where the advice involves how best to execute a law of Congress, Congress would have the greatest interest, and consequently power. Nevertheless, it is suggested that the subject of the advice is not a substantial consideration, for in either case the President is exercising his exclusive power—in one case, for example, the pardoning power, and in the other the power to execute the laws. Congress may leave a greater or lesser area of discretion or flexibility to the President in the execution of its laws by the inclusion of standards or safeguards by which the President is bound. But within the area left to the President to execute, it is his power which is and must be exercised.

The purpose of the Federal Advisory Committee Act was to guard against private interests having an inside track to advising the government, but whether it be a presidential advisor, not subject to congressional confirmation, a private individual like David Rockefeller, or a private committee of persons like David Rockefeller, the President must have the freedom to seek out whom he wishes for advice. The Act would restrict only advice from a "committee," but there is no constitutional distinction between the advice of a committee and that of an individual; if Congress can regulate the one, it may regulate the other.

In short, however Congress wishes to regulate its own advisory committees and its own agencies to insure that the public's viewpoint is adequately represented, it cannot legislate to require the President to hear all sides of an issue before he makes a decision.

The above argument assumed private committees, not funded by Congress. A committee might be formed by the President but paid from appropriations (e.g., the Clemency Board). Here both Congress and the President have legitimate interests, and Congress's interest in regulation is substantial because its funds are utilized. How a court might decide this conflict is hard to determine.

Important also would be the availability of such a claim of unconstitutionality by officers subordinate to the President with respect to committees advising them. A clear distinction would be that all such officers hold positions created by Congress, which presumably reduces their ability to claim invasion of their offices by the branch which created them. A policy argument to support the constitutionality of an inclusion of all officers within the Act, moreover, is that they, unlike the President, are not directly responsible to the electorate, so that, while the check on the President against serving private rather than public interests is the ballot box, his officers are not so checked. Nevertheless, to the extent that the officer is exercising presidential powers delegated to him, the same policy arguments can be made with respect to his need for unfettered advice. A good example is an agency head entrusted by the President with the responsibility for suggesting names of persons to be nominated by the President to the Senate for confirmation (e.g., the Attorney General with regard to federal judges). Here the officer is acting solely as an agent of the President and not in respect to any statutory power given him. When he receives advice from some committee, that advice is similarly outside the scope of legitimate congressional inquiry. This should be especially true because, in such a case, Congress (through the Senate) will, or should, independently pass on the fitness of the nominee.

## C.

The third constitutional question is whether the President may except certain committees from certain of the Act's requirements on the basis of executive privilege. The Supreme Court has decided that a constitutional executive privilege exists, even if its parameters are not clear. *United States v. Nixon*, 418 U.S. 683 (1974). While the privilege may not prevail against a particularized need for evidence in a criminal trial, it certainly should prevail against a general requirement for open advisory meetings. The practical considerations which compel the need for some sort of executive privilege were recognized by the Supreme Court in *Nixon*, and those considerations would be undermined by applications of the Act's requirements in all cases covered by its definitions. Some of the confidentiality that might be required may be provided by the Act itself, but if courts are prepared to read those exceptions out of the Act, as suggested by *Gates* and *Nader*, then reliance on executive privilege may be called for.

Executive privilege, unlike the first two constitutional objections, discussed above, would probably not void the regulation of the President's advisory committees, but rather would only limit it. Thus, the charter requirement would

remain as well as the requirement of notice in the Federal Register. So also, most probably, would the requirement of a federal employee attending all meetings of the committee.

It might be argued that private committees discussing matters without the presence of the President would not be deserving of executive privilege. First, however, discussions by executive officers without the presence of the President are sufficient for executive privilege. Second, if the committee's meeting is sufficiently imbued with presidential considerations to bring it within the Act, it is sufficiently connected to bring it within executive privilege. Third, the considerations justifying executive privilege mentioned by the Court in *Nixon* would apply equally to a private group advising the President as well as to his own advisers.

A claim of executive privilege might be extended to meetings of advisory groups created and/or funded by Congress as well. Executive officers, by analogy, hold positions created by Congress and are paid from appropriations but are able to invoke executive privilege, when allowed by the President.

Executive privilege could also be a basis for claiming confidentiality of advisory committees advising executive officers as opposed to the President (e.g., the ABA Committee on the Federal Judiciary). Thus, since an executive officer can claim executive privilege with relation to advice or recommendations of staff members, so by analogy should he be able to claim privilege with relation to private committees, or for that matter committees created and funded by Congress.

Case law support for the extension of this privilege is lacking, although it is settled practice. It is a conflict between Congress and the President which has not been put to the courts to decide, although with relation to the Federal Advisory Committee Act it would be decided by a court because a private party would be the one precluded by executive privilege. The courts' reactions to attempts by agencies to withhold information under the Freedom of Information Act might indicate a reluctance to sanction equivalent withholdings under a claim of executive privilege.

ANTONIN SCALIA
*Assistant Attorney General*
*Office of Legal Counsel*