ILLINOIS INSTITUTE FOR CONTINU-
ING LEGAL EDUCATION, an Illinois
nonprofit corporation, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
LABOR, an agency of the executive
branch of the United States govern-
ment, Raymond Donovan, Secretary of
Labor, Thorne Auchter, Assistant Secre-
tary of Labor for Occupational Safety
and Health, Alfred Zuck, Assistant Sec-
retary of Labor for Administration and
Management, Office of Management
and Budget, an agency of the executive
branch of the United States govern-
ment, and David Stockman, Director of
the Office of Management and Budget,
Defendants.

No. 81 C 1629.

United States District Court,
N. D. Illinois, E. D.

Aug. 27, 1982.

Michael D. Freeborn, Rooks, Pitts, Fullagar, & Poust, Chicago, Ill., for plaintiff.

Roderick Palmore, Asst. U. S. Atty., Chicago, Ill., Thomas R. Kline, Andrew M. Wolfe, Barbara L. Gordon, J. Paul McGruth, Asst. Attys. Gen., Washington, D. C., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This case requires us to construe the term "agency records" under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), in a somewhat unusual context. Plaintiff Illinois Institute for Continuing Legal Education seeks disclosure of a two volume "briefing book" on the United States Department of Labor (DOL) prepared by then President-elect Reagan's transition staff in December of 1980. Named as defendants are Secretary of Labor Raymond Donovan and the DOL.[1] Defendants have accorded plaintiff access to some of the material they seek, but have refused to make complete disclosure because (1) the second volume of the briefing book is not an "agency record" subject to the FOIA's commands, and (2) some of the material is exempted from disclosure under § 552(b) of the FOIA. Cross-motions for summary judgment are pending before the court.

---

1. Thorne Auchter and Alfred Zuck, officials of the DOL, and Office of Management and Budget and David Stockman were also named as defendants. We have earlier granted judgment in favor of these defendants, on the ground that they were never in custody, possession or control of the briefing book and hence have not improperly withheld the book from plaintiff in violation of the FOIA. *See Illinois Institute for Continuing Legal Education v. United States Dep't of Labor*, No. 81 C 1629, slip op. at 3–4 (N.D.Ill. March 3, 1982).

## I

We turn first to defendants' claim that volume two of the briefing book does not qualify as an "agency record" subject to the FOIA. The FOIA provides that,

> On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B) (1976). "Under 5 U.S.C. § 552(a)(4)(b) federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). The presence of "agency records" is therefore essential to a FOIA claim. Plaintiff claims the volume qualifies as an "agency record" under two separate theories.

First, plaintiff argues that the President-elect's transition team is an "agency" within the meaning of the FOIA, and that the volume qualifies as a "record" of the transition team.[2] Defendants do not dispute that the volume is a "record," but do argue that the transition team is not an "agency."

The FOIA states,

> For purposes of this section, the term "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, government-controlled corporation, or other establishment in the executive branch of the Government.

5 U.S.C. § 552(e) (1976). Section 551(1) in turn provides that "'agency' means each authority of the Government of the United States whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1) (1976). The legislative history of the FOIA indicates that Congress intended the term "agency" to reach entities "which perform governmental functions and control information of interest to the public." House Rep. No. 876, 93d Cong., 2d Sess. 8 (1974), U.S.Code Cong. & Admin.News 1974, pp. 6267, 6274, *reprinted in* Subcommittee on Government Information and Individual Rights of the House Committee on Government Operations & Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93–502) —Source Book: Legislative History, Texts, and Other Documents 128 (Jt. Comm. Print 1975) [hereinafter cited as Source Book]. Thus, an entity qualifies as an "agency" under the FOIA only if it has authority to perform specific governmental functions. *See Niemeir v. Watergate Special Prosecution Force*, 565 F.2d 967, 969 n.2 (7th Cir. 1977); *Washington Research Project, Inc. v. HEW*, 504 F.2d 238, 248 (D.C.Cir,1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *Soucie v. David*, 448 F.2d 1067, 1073 (D.C.Cir.1971);[3] *Ciba-Geigy Corp. v. Mathews*, 428 F.Supp. 523, 527–28 (S.D.N.Y.1977); *Wolfe v. Weinberger*, 403 F.Supp. 238, 240–41 (D.D.C.1975); *Gates v. Schlesinger*, 366 F.Supp. 797, 798–99 (D.D. C.1973). An entity which is autonomous of the government is not an "agency" under the Act. *See Public Citizen Health Research Group v. HEW*, 668 F.2d 537 (D.C. Cir.1981); *Irwin Memorial Blood Bank v. American National Red Cross*, 640 F.2d 1051 (9th Cir. 1981); *Forsham v. Califano*, 587 F.2d 1128, 1138–39 (D.C.Cir.1978), *aff'd sub nom. Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 978, 63 L.Ed.2d 293 (1980); *Rocap v. Indiek*, 539 F.2d 174, 177 (D.C.Cir.1976); *Lombardo v. Handler*, 397 F.Supp. 792, 795–96 (D.D.C.1975), *aff'd mem.*, 546 F.2d 1043

---

**2.** Of course, the transition staff has not "withheld" the volume, DOL has. However, it seems clear that under appropriate circumstances an agency such as DOL can violate the FOIA by withholding records of another agency. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 157, 100 S.Ct. 960, 972, 63 L.Ed.2d 267 (1980).

**3.** The holding of *Soucie v. David* was explicitly endorsed by Congress when it amended the FOIA in 1974. *See* House Conf.Rep.No. 1380, 93d Cong., 2d Sess. 15, *reprinted in* Source Book, *supra* at 232.

(D.C.Cir.1976), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977). The principle that autonomy from the government precludes a finding that an entity is an "agency" under the Act was endorsed by the Supreme Court in *Forsham v. Harris,* 445 U.S. 169, 100 S.Ct. 978, 63 L.Ed.2d 293 (1980), where the Court held that private entities receiving grants of federal funds and subject to federal supervision are not "agencies" within the meaning of the FOIA, since they retain substantial autonomy from the Government, noting that Congress has always attempted to "preserv[e] grantee autonomy," *id.* at 179, 100 S.Ct. at 983. It concluded "that Congress did not intend that grant supervision short of Government control serve as a sufficient basis to make the private records 'agency records' under the Act. . . ." *Id.* at 182, 100 S.Ct. at 985.

We now must examine the President-elect's transition team to determine whether it has the characteristics of an "agency" under the FOIA. There appears to be no reported case which has reached this question.[4]

Provision for the President-elect's transition team is made in the Transition Act of 1963, which provides in pertinent part,

> The Administrator of General Services, referred to hereafter in this Act as "the Administrator," is authorized to provide, upon request, to each President-elect and each Vice-President-elect, for use in connection with his preparations for the assumption of official duties as President or Vice President necessary facilities, including--
>
> . . . . .
>
> (2) Payment of the compensation of members of office staffs designated by the President-elect or Vice-President-elect at rates determined by them not to exceed the rate provided by the classification Act of 1949, as amended, for grade GS-18: *Provided,* That any employee of

any agency of any branch of the Government may be detailed to such staffs on a reimbursable or nonreimbursable basis with the consent of the head of the agency; and while so detailed such employee shall be responsible only to the President-elect or Vice-President-elect for the performance of his duties; *Provided further,* That any employee so detailed shall continue to receive the compensation provided pursuant to law for his regular employment, and shall retain the rights and privileges of such employment without interruption. Notwithstanding any other law, persons receiving compensation as members of office staffs under this subsection, other than those detailed from agencies, shall not be held or considered to be employees of the Federal Government except for purposes of the Civil Service Retirement Act, the Federal Employees' Compensation Act, the Federal Employees' Group Life Insurance Act of 1954, and the Federal Employees Health Benefits Act of 1950;

Pub.L.No.88–277, § 3(a), 78 Stat. 153 (1964), *as amended by* Pub.L.No.94–499, §§ 1–2, 90 Stat. 2380 (1976), *codified at* 3 U.S.C. § 102 note (1976).

 The Transition Act manifests a congressional concern with preserving the autonomy of the transition staff from the federal government. Even federal employees serving on the staff are insulated from the government. The transition staff is clearly not in the control of the incumbent President; it answers only to the President-elect. As such, the staff is outside of the executive branch, since "the Executive Power is vested in a President of the United States of America," U.S.Const. art. II, § 1, and the transition staff is outside the control of the President. The autonomy accorded the transition staff compels the conclusion that the staff is not within the executive branch of government and hence

---

4. The question was reserved by the court in *Wolfe v. HHS,* 539 F.Supp. 276, 277 n.1 (D.D.C. 1982).

not an "agency" within the meaning of § 552(e) of the FOIA.[5]

Plaintiff's second theory is that the second volume of the briefing book is an "agency record" of the DOL. There is no dispute that the DOL is an "agency" under the FOIA; the question defendants raise is whether the volume is an "agency record" of the DOL. In order to make this determination, the nexus between the volume and the DOL must be examined.

■ Only two copies of the disputed volume have ever been in the custody, control or possession of any DOL employees.[6] The first is Secretary Donovan's personal copy. When Secretary Donovan took office, this copy was placed in a safe within the Secretary's vault and has remained in his exclusive control at all times. Apart from the defense of this case, no use whatsoever has been made of Secretary Donovan's copy since he became Secretary of Labor. Supplemental Declaration of James Hooley ¶ 2. The other copy was inadvertently left in the office of Daniel Lacey, a DOL official, by the transition team. The book remained on his shelf, unknown to him, from January until September 1981, when he became aware of the presence of the book and of its involvement in this litigation. He then promptly turned the book over to the DOL's attorneys. Mr. Lacey has not read nor made any use of the volume while it was in his office nor, to his knowledge, has any other person. Declaration of Daniel Lacey ¶¶ 4–5.

■ The test for determining whether a given record qualifies as an "agency record" under the FOIA is whether the agency has created or obtained the record. *Forsham v. Harris*, 445 U.S. 169, 182–86, 100 S.Ct. 978, 985–987, 63 L.Ed.2d 293 (1980).[7] Plaintiff does not contend that DOL created the volume; the dispute is over whether DOL "obtained" it. In order to "obtain" a record, an agency must acquire control over it. *See id.* at 179–82, 100 S.Ct. at 983–985; *see also Carson v. U. S. Department of Justice*, 631 F.2d 1008, 1010–11 (D.C.Cir. 1980); *Ryan v. Department of Justice*, 617 F.2d 781, 785–86 (D.C.Cir.1980); *Goland v. CIA*, 607 F.2d 339, 347 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Iglesias v. CIA*, 525 F.Supp. 547, 565 (D.D.C.1981); *Ciba-Geigy Corp. v. Mathews*, 428 F.Supp. 523, 529–32 (S.D.N.Y.1977). Plaintiff argues that since at least one copy is in the control of Secretary Donovan, the Secretary, and hence DOL, has "obtained" the volume, transforming it into an "agency record." However, the fact that the head of the Department controls the record does not mean that the record is automatically a departmental record. If that were the case, the distinction between the personal papers of the Secretary and the agency's papers would be obliterated. The Court recognized as much when it held that records of telephone conversations made by former Secretary of State Henry Kissinger while he was National Security Advisor to the President did not become "agency records" of the Department of State.

---

**5.** This conclusion is consistent with a legal opinion provided to the Office of the President-elect on November 26, 1980 by the Assistant General Counsel to the General Services Administration. *See* Brief in Support of Cross-Motion for Summary Judgment, and in Answer to the Defendants' Motion for Summary Judgment Ex. B.

**6.** An agency can improperly withhold material in violation of the FOIA only if it has custody, control or possession of the material. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). Hence, the two copies are the only copies relevant to plaintiffs' FOIA claim against DOL and Secretary Donovan.

**7.** In *Forsham*, the Court rejected a number of other tests urged by plaintiff for determining whether material is an "agency record." The Court held that the physical location of records at an agency's offices is insufficient, 445 U.S. at 157, 100 S.Ct. at 972, *see also Goland v. CIA*, 607 F.2d 339, 345–47 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Wolfe v. HHS*, 539 F.Supp. 276, 277 (D.D.C.1982); as is an agency's access to the material, 445 U.S. at 185–86, 100 S.Ct. at 986–987; *see also Wolfe v. HHS*, 539 F.Supp. 276, 278 (D.D.C.1982); and the fact that the record was created with federal funds, 445 U.S. at 179–82, 100 S.Ct. at 983–985; *see also St. Michael's Convalescent Hospital v. California*, 643 F.2d 1369, 1373–74 (9th Cir. 1981).

The [ ] requesters nevertheless contend that if the transcripts of telephone conversations made while adviser to the President were not then "agency records," they acquired that status under the Act when they were removed from White House files and physically taken to Kissinger's office at the Department of State. We simply decline to hold that the physical location of the notes of telephone conversations renders them "agency records." The papers were not in the control of the State Department at any time. They were not generated in the State Department. They never entered the State Department's files, and they were not used by the Department for any purpose. If mere physical location of papers and materials could confer status as an "agency record" Kissinger's personal books, speeches, and all other memorabilia stored in his office would have been agency records subject to disclosure under the FOIA.

*Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 157, 100 S.Ct. 960, 972, 63 L.Ed.2d 267 (1980).

 To be "agency records," something more than mere possession of the records by an agency official must be shown. Some nexus between the agency's work and the records must be established. *See SDC Development Corp. v. Mathews*, 542 F.2d 1116, 1120–21 (9th Cir. 1976); *Soucie v. David*, 448 F.2d 1067, 1075–76 (D.C.Cir.1971); *Tax Reform Research Group v. IRS*, 419 F.Supp. 415, 425 (D.D.C.1976); Note, *"Agency Records" Under the Freedom of Information Act: An Analysis of* Forsham v. Califano, 13 Ga.L.Rev. 1040, 1055 (1979); Note, *The Definition of "Agency Records" Under the Freedom of Information Act*, 31 Stan.L. Rev. 1093, 1106 (1979). *See also* Comment, *What Is a Record? Two Approaches to the Freedom of Information Act's Threshold Requirement*, 1978 B.Y.U.L.Rev. 408. Only if a nexus is present can it be said that the "agency" and not merely an individual within the agency has "obtained" the records in question.

 Plaintiff argues that the requisite nexus can be found in that the briefing book was prepared to assist members of the Reagan administration in performing their duties and hence may have "influenced" Secretary Donovan and others in the performance of their official duties. This test, however, is inconsistent with the result in *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 978, 63 L.Ed.2d 293 (1980), where the Court held that the FOIA does not reach records of private grantees that receive federal funds and are subject to federal supervision, even though the Court recognized that the data generated by the grantees to which the FOIA requesters sought access "influenced" the government in the performance of its functions. *See id.* at 182–86, 100 S.Ct. at 985–987. Unless records have been actually "obtained" by an "agency", the fact that individuals within the agency may have been influenced by the records is insufficient to convert the record into an "agency record" within the meaning of the FOIA. *See Washington Research Project, Inc. v. HEW*, 504 F.2d 238, 248 (D.C.Cir.1974); *Ciba-Geigy Corp. v. Mathews*, 428 F.Supp. 523, 530–32 (S.D.N.Y. 1977); *Wolfe v. Weinberger*, 403 F.Supp. 238, 241 (D.D.C.1975); *Lombardo v. Handler*, 397 F.Supp. 792, 795–96 (D.D.C.1975), aff'd mem., 546 F.2d 1043 (D.C.Cir.1976), cert. denied, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977); Note, *Developments Under the Freedom of Information Act— 1977*, 1978 Duke L.J. 189, 190–92. Moreover, plaintiff's "influence" test would destroy the distinction between private papers and agency records while expanding the reach of the FOIA to an unworkable extent. Under plaintiff's test, every document in the possession of an agency official and which has "influenced" his work would be covered by the statute. This would presumably reach hundreds of thousands of items which clearly are private papers or memorabilia not covered by the definition of "agency records," but which nevertheless "influence" their owners.

 We conclude that the requisite nexus between the agency and the record is present only if the record was prepared or

actually used by an agency official in connection with his duties. This is consistent with *Forsham*'s statement that "[r]eliance or use may well be relevant, however, to the question of whether a record in the possession of an agency is an 'agency record.'" 445 U.S. at 177 n.7, 100 S.Ct. at 983 n.7. *See also Kissinger*, 445 U.S. at 157, 100 S.Ct. at 972 (documents held not to be agency records since "they were not used by the Department for any purpose"). This test also preserves the distinction between an individual's private papers, which may "influence" him but which remain private, and papers which are utilized in the course of official business and hence lose their private character.

 Under the test we have enunciated, the second volume of the briefing book is not an "agency record." It has never been used by any employee of DOL. The copy in Mr. Lacey's office has never been used at all by anyone in government, and Secretary Donovan's copy has remained segregated from departmental records and has never been used by the Secretary since he took office. No use of the volume has been made which would strip it of its character as a private paper of the Secretary's. The volume's physical location at DOL had no functional significance. The volume has not been prepared or used pursuant to the functioning of the DOL, and hence is not a

record of the DOL. The test we employ and result we reach is consistent with the holding of what appears to be the only other case on point, *Wolfe v. HHS*, 539 F.Supp. 276 (D.D.C.1982). There Judge Gesell held that a report on the Department of Health and Human Services prepared by President-elect Reagan's transition staff which was given to Secretary Schweiker was not an "agency record" of HHS under the FOIA.

> [A]lthough copies of the report are physically located at HHS the report was not generated by HHS, is not within the control of HHS, and indeed never entered the Department's files or was ever used by the Department for any purpose.

*Id.* at 277 (footnote omitted).[8]

 Thus, we conclude that we have no jurisdiction under the FOIA over the second volume of the briefing book in question.[9]

## II

This conclusion leads us to the second issue raised by the parties: defendants' claim that certain portions of the first volume of the book, which all agree is an "agency record" subject to the FOIA, are exempt from disclosure under the Act. Plaintiff does not quarrel with defendants' assertion that these portions fall into cer-

---

**8.** Our conclusion is also consistent with the opinion of the Assistant General Counsel to the General Services Administration. *See* Brief in Support of Cross-Motion for Summary Judgment, and in Answer to Defendants' Motion for Summary Judgment Ex. B.

**9.** Plaintiff alternatively argues that even if the FOIA does not apply to the second volume, defendants still must disclose it under certain regulations of the DOL. Plaintiff does not explain how we have jurisdiction to require disclosure if not under the FOIA, though presumably plaintiff would rely on the right of review contained in the Administrative Procedure Act, 5 U.S.C. §§ 702, 706 (1976). Assuming that we have jurisdiction, plaintiff's claim fails on its merits. 29 C.F.R. § 70.11(a) (1981), which contains the general duty to disclose DOL records, states that it only applies to "records of the Department of Labor or any of its constituent agencies ...." As we held above, the second volume is not a record of the DOL. Section

70.11(b), on which plaintiff specifically relies, is titled "Records made available notwithstanding exemption from requirements of the Freedom of Information Act." The subsection makes clear that it only covers records to which the FOIA applies, but which are exempted from disclosure under the FOIA. Since we have held that the book is not an "agency record," the FOIA, and hence § 70.11(b), does not apply to it. Plaintiff also relies on § 70.13, which applies only to "documents or part thereof containing a final evaluation by an independent contractor of any external program or activity carried out by the Department of Labor ...." Plaintiff makes no attempt to explain why the transition staff qualifies as an "independent contractor" of the DOL. No "contract" between the DOL and the transition staff is alleged, and it seems certain that none existed. Thus, none of the regulations apply to the material in question.

tain exemptions from FOIA's general duty to disclose contained in 5 U.S.C. § 552(b) (1976). Instead, plaintiff argues that as a result of governmental misconduct defendants should be prohibited from raising their exemption defenses. Plaintiff makes two arguments.

First, plaintiff argues that defendants have waived their exemption defenses by failing to raise them when plaintiff initially requested access to the briefing book prior to filing this lawsuit. The facts are as follows. On February 20, 1981, plaintiff submitted its FOIA request. Amended Complaint Ex. B. Plaintiff received an acknowledgement of its request which stated that the request had been referred to an agency within the DOL, the Occupational Safety and Health Administration (OSHA). *Id.* Ex. C. On March 4, counsel for plaintiff received a telephone call from an employee of OSHA, Joanne Goodell. She informed counsel that OSHA had no copy of the book and that counsel would soon be formally advised that no one within the DOL had a copy of the book. *Id.* ¶¶ 21–22. On March 23, plaintiff filed this action. On April 9, 1981, in the first pleading filed by defendants in the case, defendants admitted that the book was in the possession of DOL officials and raised their exemption defenses.

 Plaintiff's argument that defendant was required to raise its exemption defenses prior to filing a responsive pleading in the instant action is without support. A similar argument was rejected by the court in *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242 (D.C.Cir.1977). There, the FOIA requester argued that the agency's failure to adequately document its exemption claims when the FOIA request was made at the agency level precluded the agency from raising those claims in the district court. The court agreed that the agency did not adequately support its exemption claims prior to the commencement of proceedings in the district court, but went on to state,

We cannot agree, however, that failure to follow those procedures in the administrative review of a FOIA request is a valid reason for an appellate court to reverse the judgment of a district court that the requested information is exempt, where those requirements have been satisfied in the district court proceeding.

In a FOIA action the district court is not limited to review of the quality of agency decision-making. It decides a claim of exemption *de novo,* and the agency's opinions carry no more weight than those of any other litigant in an adversarial contest before a court. We do not excuse the Air Force's failure to provide Mead Data with sufficient detail about the nature of the withheld documents and its exemption claims at the administrative level, but for purposes of this case those inadequacies are irrelevant. We are not reviewing the agency's decision or even the district court's approval of an agency decision. We are reviewing only the district court's *de novo* decision that the information withheld by the Air Force is indeed protected from disclosure by exemption five. If we are to reverse the trial judge, Mead Data must show that either he incorrectly decided that the requested information was exempt or that it was deprived of the opportunity to effectively present its case to the court because of the agency's inadequate description of the information withheld and the exemptions claimed.

*Id.* at 251 (footnote omitted). The cases universally hold that exemption defenses are not too late if initially raised in the district court. *See Ryan v. Department of Justice,* 617 F.2d 781, 792 (D.C.Cir.1980); *Jordan v. United States Department of Justice,* 591 F.2d 753, 779–80 (D.C.Cir.1978); *But cf. Long v. Bureau of Economic Analysis,* 646 F.2d 1310, 1322–23 (9th Cir. 1981) (per curiam) (excessive delay in presenting FOIA defenses to the district court justifies prohibiting agency from raising defenses); *Holy Spirit Association for the Unification of World Christianity v. CIA,* 636 F.2d 838, 846–47 (D.C.Cir.1980) (same). Plaintiff has

cited no case to the contrary.[10] Here, defendants promptly raised their exemption claims in this court and therefore have complied with the law.

Plaintiff's second argument is that defendants should be prohibited from raising exemptions since Ms. Goodell misled plaintiffs by incorrectly stating that no one within the DOL had the book. This kind of misconduct, plaintiffs argue, should operate to bar defendants' exemption claims. However, there is no claim that Ms. Goodell was lying when she told counsel that she had not located the briefing book and had concluded that no one in the department had the book. Neither is there a claim that Ms. Goodell was negligent in failing to locate the book by March 4.[11] No "improper withholding" within the meaning of the FOIA occurs when an agency fails to locate documents within the ten day time limit provided for by 5 U.S.C. § 552(a)(6)(A)(i) (1976) if the agency has made reasonable efforts to locate the documents and if its failure to do so has been in good faith. *See Goland v. CIA*, 607 F.2d 339, 353–55 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Nolen v. Rumsfeld*, 535 F.2d 890 (5th Cir. 1980); House Rep. No. 876, 93d Cong., 2d Sess. 6 (1974), *reprinted in* Source Book, *supra* p. 3, at 126. *Cf. Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 983–84 (3d Cir. 1981)

(Courts' equitable powers under the FOIA should not be used against an agency which makes a good faith mistake). *See generally* 1 K. Davis, Administrative Law Treatise § 5.21 (2d ed. 1978). A good faith mistake is all that is present here. Since defendants' exemption claims may be raised and have been adequately documented, and since plaintiff does not quarrel with the exemption claims on their merits, defendants are entitled to summary judgment on these claims.

Defendants have previously disclosed to plaintiff all requested material which qualifies as "agency records" under the FOIA and which is not exempted from disclosure by the FOIA. Therefore, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted. Judgment to enter in favor of defendants with costs to defendants.

**10.** Plaintiff relies on the following language. "[A]gency delay in providing the court with sufficient information to determine if an exemption is justified, could amount to a failure to carry the statutory burden of proof and could also constitute improper withholding, given the policies of full and expeditious disclosure that are embodied in the Act." *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 975 (3d Cir. 1981) (footnote omitted). The language refers only to delay in providing information to "the court." No such delay is present here.

**11.** The amended complaint contains no allegations regarding the sufficiency of Ms. Goodell's search or her state of mind when she informed counsel that no one at the DOL had a copy of the briefing book. *See* Amended Complaint ¶¶ 21–23. Nor has plaintiff ever suggested the presence of any factual issues regarding Ms. Goodell's search or her state of mind, beyond conclusory allegations that someone in the government was in "bad faith" at some point.

Even if this is true, this hardly supports plaintiff's position. All Ms. Goodell told counsel was that he would soon receive a formal letter stating that no one in the DOL had the briefing book. Her prediction proved to be inaccurate, but plaintiff was in no way prejudiced; as soon as suit was filed, defendants admitted the existence of the book. In any event, Ms. Goodell's statement that no one in OSHA had a copy of the briefing book was correct. Her only "misrepresentation" was her statement that plaintiff would soon be formally advised that no one in DOL had a copy of the book. Ms. Goodell's inaccurate prediction is hardly the kind of misrepresentation which, if made in bad faith, might justify excluding defendants' exemption claims. It did not involve a presently existing fact; it may have been entirely true even if Ms. Goodell did know that Mr. Lacey and Secretary Donovan did have copies of the book. All Ms. Goodell did was make a prediction as to what action the DOL would take.