The **WASHINGTON POST**, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF STATE**, Defendant.

Civ. A. No. 83–1109.

United States District Court, District of Columbia.

April 14, 1986.

---

Boisfeuillet Jones, Jr., Carol D. Melamed, Patrick J. Carome, Washington, D.C., for plaintiff.

Jeffrey S. Paulsen, Barbara Gordon, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff, *The Washington Post*, seeks access under the Freedom of Information Act, 5 U.S.C. § 552, to certain documents created by members of former Secretary of State Alexander Haig's staff during Secretary Haig's tenure as Secretary of State. Presently before the Court are cross-motions for summary judgment.

### I.

■ The Freedom of Information Act ("FOIA" or "Act"), 5 U.S.C. § 552, empowers federal courts to order the disclosure of "agency records improperly withheld" by an "agency" from an individual requesting access. § 552(a)(4)(B). The requirements of this provision are jurisdictional. Disclosure of materials from an agency subject to the FOIA may only be obtained upon a "showing that [the] agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980).

This case confronts the third-prong of the requirement. At issue is whether a set of documents compiled daily within the Office of the Secretary of State during the tenure of Secretary of State Alexander M. Haig, Jr., and consisting of a contemporaneously generated record of official meetings, acts, and telephone calls, may be deemed an "agency record" subject to disclosure under the Act. Before turning to the merits, a review of the principal undisputed facts will be useful.

### A. Procedural History

In 1982, following the announcement of Secretary Alexander Haig's decision to resign, representatives of *The Washington Post* sought access under the FOIA to:

All meeting logs, telephone call logs, daily schedules, trip itineraries, personal calendars and diaries from January 1, 1981 to the present relating to meetings, telephone calls, conferences and activities of Secretary of State Alexander M. Haig., Jr.

Because Secretary Haig's decision had only recently been announced, the request specifically asked that the Department of State retain copies of all records complying with the request upon Secretary Haig's departure from office. Plaintiff further requested that the Department invoke its discretion to release any materials deemed by the agency to be exempt from disclosure under the Act.

After protracted dispute over the parameters of the request, the facts of which are not important to the present inquiry, the Department of State released copies of the Secretary's daily schedules and trip itineraries, and simultaneously denied access to all materials concerning meeting logs, telephone call logs, and personal calendars. It was the opinion of the Information and Privacy Coordinator at the Department of State that these latter materials were "personal records" of the Secretary and not subject to disclosure under the Act. The State Department also informed plaintiff that Secretary Haig did not maintain a personal diary and thus no document meeting this definition was available for disclosure.

Following the exhaustion of administrative remedies, plaintiff brought the present action in District Court. Thereafter, proceedings in the case were stayed pending the decision in *Bureau of National Affairs, Inc. v. United States Department of Justice*, 742 F.2d 1484 (D.C.Cir.1984), a case then on appeal to the District of Columbia Circuit which presented the questions whether telephone message slips and appointment calendars prepared for the personal convenience of Assistant Attorney General William Baxter were "agency records" under the FOIA. That case held, on the basis of the facts presented, that the telephone message slips and appointment calendars were not "agency records" for

purposes of the FOIA. 742 F.2d at 1495–96.

### B. Records of Schedule

Following the decision in *Bureau of National Affairs*, plaintiff dropped its request for personal diaries and telephone message slips and elected to pursue only those documents known as the "records of schedule".[1] The "records of schedule" are comprised of typewritten transcriptions of documents compiled on a daily basis by members of the staff of former Secretary of State Alexander Haig. It is undisputed that the records of schedule were not created at the request of Secretary Haig. The Secretary did not have direct access to the records and, in fact, was never made aware of their existence. Rather, the decision to create the records was initiated by a suggestion from Secretary Haig's receptionist—a suggestion which was approved by the Executive Assistant to the Secretary.

The creation and maintenance of the records of schedule were effected through the combined efforts of Secretary Haig's personal secretary and receptionist. Essentially, the two staff members maintained daily handwritten logs chronicling the official and unofficial activities of the Secretary and containing information gleaned by their personal monitoring of events occurring both within and outside the Office of the Secretary of State. These logs included information on all anticipated and unanticipated meetings attended by Secretary Haig, both within and outside the Department of State, as well as information concerning the exact time, date and place of the meeting, and the identities of the participants. The logs were also maintained to keep a record of all telephone calls placed to the Secretary and the time and date of the call. Other staff members occasionally provided the information when Secretary Haig's personal secretary and receptionist were either unavailable or unaware of the transaction.

The logs were later transcribed at the close of each day and combined to form a "record of schedule", a process which frequently mandated that the two staff members remain after hours. During periods of heavy work volume, the records were not transcribed until days or weeks after the events. This combined record, as typewritten and supplemented, was then stored in a central filing cabinet, which contained the official "daily agenda" of the Secretary as well as souvenirs and gifts for official visitors.

Representatives of *The Washington Post* now seek disclosure of the records of schedule on the grounds that the requested documents are "agency records" within the meaning of section 552(a)(4)(B) of the Freedom of Information Act. The Department of State vigorously denies the assertion and argues that the requested documents are "personal work aids" of Secretary Haig and thus not subject to FOIA access within the rationale of *Bureau of National Affairs, supra.*

### II.

It has long been established that the FOIA was enacted in furtherance of the belief that "an informed electorate is vital to the proper operation of a democracy." S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965), *reprinted in Freedom of Information Act Source Book:* Legislative Materials, Cases, Articles 38 (Comm. Print 1974) [hereinafter cited as "FOIA Source Book"]. Central to this purpose is the fundamental premise that "the public as a whole has a right to know what its government is doing." *FOIA Source Book* at 264. Congress found that this right can be maintained only where an informed electorate is provided with the opportunity to oversee both the actions and decisions of public officials and agencies. *SDC Development Corp. v. Mathews,* 542 F.2d 1116, 1119 (9th Cir.1976).

---

1. Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Cross-Motion for Summary Judgment at 2 n. 1.

■ This right of access to government information, however, is not absolute. Although Congress sought to expand public access, it limited that access to "agency records". *Forsham v. Harris*, 445 U.S. 169, 178, 100 S.Ct. 977, 983, 63 L.Ed.2d 293 (1980). A government agency cannot be held accountable for information under the FOIA which the agency has neither created nor possessed. *Id.* at 182, 100 S.Ct. at 985. Rather, "[t]he use of the word 'agency' as a modifier demonstrates that Congress contemplated some relationship between an 'agency' and the 'record' requested under the FOIA." *Id.* at 178, 100 S.Ct. at 983. Defining this relationship, however, is complicated by the absence of a concise and well-defined body of case law. Moreover, the problem is further exacerbated by the absence of legislative guidance as to the precise meaning of the term "agency records". "As has often been remarked, the Freedom of Information Act, for all its attention to the treatment of 'agency records,' never defines that crucial phrase." *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1106 (D.C.Cir.1983) (footnotes omitted), *modified in other respects*, 711 F.2d 1076 (1983).

■ Nevertheless, the existing body of legal precedent does provide a set of parameters useful in focusing the initial inquiry. Among these guidelines is the central principle that the FOIA not be construed to encompass documents to which an agency merely has an unrestricted, but unexercised, right to obtain. *Forsham*, 445 U.S. at 186, 100 S.Ct. at 987. The government has access to virtually unlimited documents and a contrary holding would place an unmanageable burden upon government agencies faced with corresponding demands for documents not intended to be reached under the FOIA. *Id.* at 186 n. 17, 100 S.Ct. at 987 n. 17. In addition, the FOIA does not require that an agency receiving a FOIA request actually create responsive documents. Rather, the mandatory creation of government records is governed by the provisions of the Federal Records Act. *Kissinger*, 445 U.S. at 152, 100 S.Ct. at 969 (citations omitted).

■ In summary, Congress contemplated that government agencies either obtain or create the requested records as a prerequisite to the documents becoming "agency records" within the meaning of the FOIA. *Forsham*, 445 U.S. at 182, 100 S.Ct. at 985. This nexus must be established before the tripartite jurisdictional test can be satisfied. Where the requested documents have been obtained or created by the receiving agency, the FOIA provides that the documents be made available to any member of the public unless specifically exempted by the Act itself. *See Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir.1973).

The FOIA thus "represents a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment." *Kissinger*, 445 U.S. at 150, 100 S.Ct. at 968 (1980). There are, however, "no inherent incentives that ... affirmatively spur government agencies to disclose information." *Vaughn*, 484 F.2d at 826. Therefore, balanced against this required nexus is the countervailing concern that government agencies not be allowed to defeat the purpose of the FOIA by artificially manipulating its terms. Mindful of this overarching admonition, the courts have consistently avoided the establishment of "bright-line" jurisdictional tests out of fear that such tests would provide a simple expedient for removing important government records from the intended coverage and presumptive disclosure provisions of the Act. *See Bureau of National Affairs*, 742 F.2d at 1493; *see also McGehee*, 697 F.2d at 1109 n. 63. Moreover, these tests are incapable of "precise definition and may well change as relevant factors assume varying importance from case to case." *Crooker v. United States Parole Commission*, 730 F.2d 1, 5 (1st Cir.1984), *cited with approval in Bureau of National Affairs*, 742 F.2d at 1490.

■ Thus posited, the Court is directed to conduct an examination into the "totality of the circumstances surrounding the

creation, maintenance, and use ..." of the documents to determine whether the material is, in fact, subject to the FOIA. *Bureau of National Affairs*, 742 F.2d at 1492–93. Resolution of this inquiry requires that the Court employ a bifurcated analysis. First, the Court is instructed to examine the "totality of the circumstances" underlying the creation of the document by reference to a four-factor test. This inquiry involves consideration as to whether:

(1) the document was generated within the agency seeking to avoid disclosure;

(2) the document has been placed into agency files;

(3) the document is within the agency's control;

(4) the document has been used by the agency for an agency purpose.

*Id.* at 1494. Second, the Court may draw guidance from the treatment of the disputed documents under the provisions of the various federal records management statutes. *See* 44 U.S.C. § 2901 *et. seq.* If the documents are deemed to constitute "agency records" under the applicable definitions provided in the records statutes, then this determination lends support to the conclusion that the materials are similarly "agency records" for purposes of the FOIA. *See Forsham*, 445 U.S. at 182–84, 100 S.Ct. at 985–86; *Bureau of National Affairs*, 742 F.2d at 1493.

Before proceeding to the application of the relevant criteria to the facts of the present case, two preliminary considerations remain to be addressed. First, throughout the course of these proceedings, counsel for the defendant has repeatedly emphasized that the records of

schedule were not created in response either to statute or internal agency regulation. In seeking to have the creation of the records of schedule characterized as a purely "voluntary" act, counsel would invite the Court to place undue reliance upon a single determinative factor—specifically, the proposition that documents created in the absence of legislative or agency mandate cannot rise to the status of "agency records" under the FOIA. However, nothing in the FOIA suggests that the Act was intended to encompass only those documents created by mandate of law.[2] Rather, the Act simply requires that an agency disclose those "documents which the law requires the agency to prepare or which the agency has decided *for its own reasons* to create." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62, 95 S.Ct. 1504, 1521–22, 44 L.Ed.2d 29 (1975) (emphasis added). The central inquiry remains "whether, when an employee creates a document, that creation can be attributed to the agency under the FOIA." *Bureau of National Affairs*, 742 F.2d at 1492.

Second, although the defendant correctly asserts that the mere physical location of the disputed materials within the offices of the Secretary of State does not warrant the conclusion that the documents be deemed "agency records", this observation adds little to the present inquiry. The same could be stated with respect to every document located within the four walls of the agency and yet many of these documents constitute admitted agency records subject to the FOIA. The principal utility of this observation arises in those cases addressing the requirement that records originating outside of the agency receiving a FOIA re-

2. Nor is the Court inclined to graft such a requirement to the existing case law. The *Bureau of National Affairs* opinion does not refer to such a criteria and its application would disregard the appellate court's concern that government agencies not be allowed to defeat the objectives of the FOIA through the artful drafting of agency regulations. 742 F.2d at 1493. Similarly, the Court also declines to resolve the status of the records solely by reference to the alleged intent of the authors in creating the documents. The authors' *perception* of the doc-

uments as personal work aids or agency records is not controlling. Again, the case law does not provide for such an inquiry and the inevitable result would be to ensnare the courts in the thorny problem of resolving conflicting claims of intent, an area generally inappropriate for summary judgment. *See Mazaleski v. Truesdell*, 562 F.2d 701, 717 (D.C.Cir.1977) (where motivation and credibility are involved, and the essential facts are solely within the control of the moving party, summary judgment is inappropriate).

quest first be obtained by the agency before the agency will be held accountable under the Act. *See, e.g., Kissinger,* 445 U.S. at 157, 100 S.Ct. at 972; *Wolfe v. Department of Health and Human Services,* 711 F.2d 1077, 1079–82 (D.C.Cir. 1983). In contrast to this line of cases, the critical factor here is that the disputed documents were originally generated *within* the receiving agency by agency employees. Thus, the significance of this consideration is lessened and the inquiry must proceed from a different posture.

### A. Four-factor Analysis

■ Turning to the application of the criteria delineated in *Bureau of National Affairs,* the Court concludes that the responsive materials constitute "agency records" within the meaning of the FOIA in light of the "totality of circumstances" surrounding their creation, maintenance, and use. First, there is no dispute that the "records of schedule" were generated within the agency seeking to avoid disclosure. The documents were compiled by agency employees as part of their daily work routine using agency provided materials and resources.[3] The significance of this creation, as discussed previously, is not diminished by the "voluntary" initiative manifested by the staff members in generating the documents.[4]

Second, the materials were placed into agency files. The undisputed facts reveal that the "records of schedule" were stored in a central filing cabinet accessible to members of the Secretary's staff. This filing cabinet contained, among other items, the official daily agenda of the Sec-

retary which frequently contained classified information concerning the Secretary's schedule and anticipated activities. Moreover, the documents were kept separate from the personal files and records of Secretary Haig.[5]

Third, the Court finds that the records are within the control of the agency. The argument of defense counsel that control is lacking in that the records could be disposed of at the discretion of the staff members is without merit. The fact that the government failed to exercise its authority under the applicable statutes and regulations, *see* 44 U.S.C. § 3301 *et seq.;* General Services Administration General Records Schedule 23 (1982), to retain and preserve the records of schedule is not dispositive. As stated by the Court of Appeals in *Bureau of National Affairs:*

In the context of these cases, however, the question is whether the employee's creation of the documents can be attributed to the agency for the purposes of FOIA, regardless of whether the agency requires employees to retain the documents. The government is correct, however, in one respect. Because FOIA does not require an agency to create or obtain a record, so long as the records disposal regulations permit destruction of "non-record materials" at the discretion of an agency or agency employee, documents will be available under FOIA solely based on whether an individual has chosen to keep those documents.

742 F.2d at 1495.[6] Here the Department of State has not only reviewed the documents

---

3. *Cf. Bureau of National Affairs,* 742 F.2d at 1494 (documents found to be generated within the agency where prepared on government time, at government expense and with government materials).

4. *See supra* n. 2 and accompanying text.

5. In this regard it is relevant, though not dispositive, that the staff made no attempt to segregate the materials from those documents used in the daily conduct of agency business, *i.e.,* the daily agendas and official gifts. *Cf. Bureau of National Affairs,* 742 F.2d at 1495 (daily agenda circulated to staff members and stored in desk draw-

er of personal secretary found to constitute agency records) *with Wolfe,* 711 F.2d 1077 (D.C. Cir.1983) (report of President-elect Ronald Reagan's transition team stored in office of Department's Chief-of-Staff in glass bookcase marked "personal" found not to constitute agency records). The mere fact that staff members occasionally found it convenient to store articles of personal property (purses of staff employees) in the same cabinet does not change the status of the files.

6. In rejecting the government's invitation to establish agency possession and control as the litmus test of "agency records" status under the

under the applicable records disposal regulations but has also retained a copy of the documents in view of this litigation. The government therefore has control over the documents.

Fourth, the Court concludes that the non-use of the records of schedule by the Secretary, under the facts of this case, further warrants the conclusion that the materials be deemed subject to the FOIA. Although it has been stated that the mere right of access to documents, without more, does not transform otherwise non-agency materials into "agency records" under the FOIA,[7] the functional significance of this observation is limited where the documents are generated by employees of the agency receiving the request. In the latter instance, the courts are not confronted with issues as to whether the agency has obtained "control" over records originating outside of the agency. The requirement of a threshold "nexus" between the agency and the requested documents beyond the mere coincidence of location is satisfied because the records were originally prepared by agency employees. The issue of agency use thus becomes more focused.[8]

Furthermore, the foregoing is true notwithstanding the fact that the Court of Appeals in *Bureau of National Affairs* singled out the use of disputed documents as a factor in resolving record disputes under the FOIA.[9] The *Bureau of Nation-* *al Affairs* Court was confronted with a case involving verified incidents of personal use. However, in contrast to the telephone message slips and personal appointment calendars found not to constitute agency records in that case, the record before the Court reveals that the records of schedule were never used for the personal convenience of anyone. More importantly, Secretary Haig, the official for whose personal use the records were purportedly created, was never apprised of their existence.

Therefore the essential task before the Court is to determine what significance, if any, is to be attached to the non-use of the documents. Having examined the opinion in *Bureau of National Affairs* and having weighed the competing considerations, the Court concludes that the factor of non-use weighs in favor of agency record status. First, government agencies inevitably produce reams of documents on any given day that are subsequently filed and forgotten. The importance of these documents to the conduct of agency business surely is not diminished by the vagaries inherent in their eventual use or non-use. Indeed, the importance of the materials to agency operations is, in the first instance, readily apparent from the fact that agency employees have taken the time and effort to generate, compile, and store the documents for possible future reference. Moreover, the facts

FOIA in *Bureau of National Affairs*, the Court commented that:

> Here, reliance solely on a possession or control test could be the more restrictive approach. An "agency" may choose not to assert any control over a particular document, but an employee who created that document for the express purpose of enabling him to perform his duties certainly retains possession and control over the document. The issue is not simply whether the agency *as an institution* has taken steps to "obtain" the document. Rather, the question presented by these cases is whether, when an employee creates a document, that creation can be attributed to the agency under FOIA.

742 F.2d at 1492 (emphasis added).

7. *See, e.g., Forsham,* 445 U.S. at 186, 100 S.Ct. at 987.

8. In discussing the propriety of a use test in *Bureau of National Affairs,* the Court of Appeals cited with approval Judge Prentiss Marshall's opinion in *Illinois Institute for Continuing Legal Education v. United States Department of Labor,* 545 F.Supp. 1229 (N.D.1982). That opinion noted that the requisite nexus between an agency and a requested record is present only where the document is *"prepared or actually used"* by an agency official in connection with his duties." *Illinois Institute,* 545 F.Supp. at 1234–35, *cited with approval in Bureau of National Affairs,* 742 F.2d at 1491.

9. 742 F.2d at 1490. The specific inquiry calls for consideration of whether the documents have been used by the agency for an agency purpose. As discussed in the text *infra,* the Court does not conclude that the agency must *actually* use the document to establish that the requested materials are agency records. Instead, the creation and filing of documents absent indicia of personal use may constitute the "use" of agency records for an agency purpose.

of this case reinforce this observation. In contrast to the documents found not to constitute agency records in *Bureau of National Affairs*, the records of schedule: (1) contain an accurate recital of events as they actually transpired; (2) frequently contain substantive information; (3) were systematically transcribed and compiled to form a single record; and (4) were chronologically filed and maintained on a continuing basis.[10] The creation, maintenance, and storage of the records of schedule thus evidence numerous indicia of record-keeping extraneous to the use of the documents as mere personal work aids.

Second, it has been repeatedly emphasized that excessive reliance upon a use test can prove illusory. The difficulty encountered by a FOIA requestor in discovering the contents of requested documents, let alone the agency's treatment of the materials, poses difficulties in proving actual use that are not easily surmounted.[11] The use test relied upon in *Bureau of National Affairs* owes its primary significance to the presence of incidents of personal use. The use of documents solely for personal convenience strongly reinforces the conclusion that disputed documents are not agency records subject to the FOIA. However, the converse is not true. The factor of non-use weighs in favor of record status.[12]

### B. Federal Records Statutes

█ The Court's conclusion that the records of schedule constitute "agency records" for purposes of the FOIA is further supported by the applicable definitions provided in the various federal records statutes. Although Congress failed to define agency records in the FOIA, it did provide definitions in these statutes. While these definitions are not dispositive of the proper interpretation of the term under the FOIA, the Court of Appeals for this Circuit has specifically noted the relevance of the definition of agency records provided in the Federal Records Management Act to document status disputes under the FOIA. *Bureau of National Affairs*, 742 F.2d at 1493. The applicable definition of "records" provided by the Federal Records Management Act, 44 U.S.C. § 3301 defines "records" as including:

> all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, *made* or received *by an agency of the United States Government* under Federal law or *in connection with the transactions of public business and preserved* or appropriate for preservation *by that agency* or its legitimate successor *as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them.*

44 U.S.C. § 3301 (emphasis added). In this regard, the Court notes that the records of schedule serve as evidence of the proce-

---

**10.** *Cf. Bureau of National Affairs*, 742 F.2d at 1495–96 (telephone message *slips* retained for "short periods of time" and disposed of on intermittent and "haphazard" basis, found not to comprise agency records; personal appointment calendars not distributed to staff members but retained solely for the personal convenience of individual officials, and containing information identical to that in previously released agency records, found not to constitute agency records). The status of these records is not otherwise changed because of the inclusion of information concerning the personal activities of Secretary Haig. This information can readily be segregated and deleted from the records prior to disclosure. *Bureau of National Affairs*, 742 F.2d at 1496.

**11.** *See McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1109 n. 63 (D.C.Cir.1983).

**12.** In light of the undisputed non-use of the documents, the only viable alternative would be for the Court to attach no significance to the non-use of the records. Otherwise, reluctant officials would negate the effect of this factor by failing to keep records of actual use. *See McGehee*, 697 F.2d at 1109 n. 63. The Court would nevertheless conclude that the records of schedule constitute "agency records" after weighing the remaining factors.

dures and operations of the agency and that they were made by a federal agency in connection with the transaction of public business. In addition, General Records Schedule 23, in force at the time of the initial FOIA request included among records materials subject to the Federal Records Management Act all "logs ... and other records documenting meetings, appointments, telephone calls, trips, visits, and other activities of Federal Employees" containing "substantive" information "which has not been incorporated into memoranda, reports, correspondence, or other records included in official files." Similarly, these regulations provide additional support for the conclusion that the records of schedule are agency records for purposes of the FOIA.

### III.

■ The conclusion that the records of schedule constitute "agency records" subject to disclosure under the FOIA is consistent with case law and the express purpose of the Act. Nothing in this opinion should be construed to contravene the holding in *Bureau of National Affairs* that personal papers created solely for the personal use and convenience of the author are not encompassed by the FOIA. 742 F.2d at 1493. In view of the foregoing, the Court concludes, that where the creation and maintenance of a document evinces numerous indicia of agency recordkeeping, under circumstances totally lacking in incidents of personal use, the document may be deemed subject to disclosure under the Act. The Court's decision that the records of schedule are subject to disclosure does not limit the defendant's right to withhold portions of the documents under a valid claim of statutory exemption pursuant to the Act.

Accordingly, defendant's motion for summary judgment is denied and plaintiff's cross-motion for summary judgment is hereby granted.