**BLOOMBERG, L.P., Plaintiff,**

v.

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Defendant.**

**No. 02–1582 (RJL).**

United States District Court, District of Columbia.

July 28, 2004.

---

Jay Ward Brown, Thomas Curley, Levine Sullivan Koch & Schulz, LLP, Washington, DC, for Plaintiff.

Thomas Jeffrey Karr, Securities & Exchange Commission, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the defendant's motion to dismiss and for summary judgment, and the plaintiff's cross-motion for summary judgment. This action concerns six requests made by the plaintiff, Bloomberg, L.P. ("Bloomberg"),[1] under the Free-

---

1. On September 29, 2003, the Court granted  the motion of Baltimore Sun Co., CBS Broad-

dom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents in the possession of the Securities and Exchange Commission ("SEC"). The SEC moves for summary judgment based on its conclusion that of the thirteen documents it identified in response to five of Bloomberg's requests, ten documents are not "agency records" subject to disclosure under FOIA and the remaining three documents are subject to FOIA exemptions. With regard to Bloomberg's sixth request, the SEC argues that because Bloomberg has failed to exhaust its administrative remedies, this Court lacks jurisdiction over the request. Bloomberg cross-moves for summary judgment on the ground that all thirteen documents responsive to its first five requests should be disclosed because they are "agency records" not subject to any FOIA exemptions. Moreover, with regard to its sixth request, Bloomberg asserts that because the SEC failed to respond within the statutorily required period, Bloomberg has constructively exhausted any administrative remedies required for this action.

For the following reasons, the Court GRANTS the defendant's motion with regard to Bloomberg's first five FOIA requests, and DENIES the motion with regard to the sixth request. The Court further DENIES the plaintiff's motion for summary judgment.

### Factual Background

This case arises out of six FOIA requests made by Bloomberg, the parent company of Bloomberg News, a twenty-four hour global news service based in New York, during the period from April 26, 2002 and May 15, 2002. All six re-

quests sought documents from the SEC regarding meetings, appointments, and other contacts that Chairman Harvey Pitt ("Chairman Pitt") and his top staff members had with the officials of companies subject to the SEC's regulatory authority.

The first request, filed via electronic mail on April 26, 2002, sought copies of "SEC Chairman Harvey Pitt's appointment log, or appointment calendar, from August 3, 2001, through April 26, 2002" ("First Request").[2] Amend. Compl. ¶ 11. The SEC denied the First Request on May 28, 2002 on the grounds that the agency did not maintain records responsive to the request, and Bloomberg subsequently appealed this denial on June 24, 2002. *Id.* at ¶¶ 12, 14. The appeal was denied on August 14, 2002 because the agency determined that the documents responsive to the request were "personal documents," not "agency records" subject to FOIA requirements. *Id.* at ¶ 20A.

On May 6, 2002, Bloomberg sent its second request via letter to the SEC, requesting "records of telephone logs reflecting incoming or outgoing calls; telephone message slips; and notes related to or indicating invitations to or attendance [at] telephonic conference calls" that were "created by or on behalf of Chairman Harvey Pitt" between August 3, 2001 and May 6, 2002 ("Second Request").[3] *Id.* at ¶ 22. In a July 29, 2002 letter, the SEC denied the Second Request, indicating that it construed the request "to be for records of telephone calls made to or by the Chairman and any related messages and notes" and that the agency did not maintain such records. *Id.* at ¶ 23.

---

casting Inc., Chicago Tribune Co., Copley Press, Inc., Gruner + Jahr USA, LA Times Comm., LLC, Newsday, Inc., and Reuters America to intervene as plaintiffs in this action. However, as these parties have neither responded to the SEC's motion for dismissal and summary judgment nor presented their

own dispositive motions, for the purposes of this opinion, the Court will refer to Bloomberg as the plaintiff in this case.

2. FOIA Request No. 2002–1766.

3. FOIA Request No. 2002–1828.

On May 8, 2002, Bloomberg requested (1) copies of notes "created by Mark Radke, chief of staff, for himself or on behalf of Chairman Harvey Pitt, relating to any meetings that the Chairman held with Eugene O'Kelly, chief executive of KPMG," as well as "notes from Chairman Pitt and / or any other staff member who attended the meetings, along with any message slips, appointment logs, or telephone records that relate to any meetings with O'Kelly or KPMG," and (2) "any notes made by staff or by Chairman Pitt, relating to any meetings he held with Xerox Chairman Anne Mulcahy, Goldman Sachs Chairman Henry Paulson, Jr., and Morgan Stanley [C]hairman Phil Purcell," along with any message slips, appointment logs, or telephone records that relate to these meetings, in all cases limited to documents created between August 3, 2001 and May 8, 2002 ("Third Request").[4] Amend. Compl. ¶ 24. The Third Request was denied by the SEC on July 15, 2002 on the grounds that the agency did not maintain the records requested. Id. at ¶ 25.

In another May 8, 2002 letter, Bloomberg requested notes "made by Chairman Pitt, relating to any meetings he held with senior executives of Merrill Lynch, Citigroup/Salomon Smith Barney, Paine Webber, Lehman Bros., Credit Suisse, DeutscheBank, Prudential Securities, J.P. Morgan, UBS Warburg and Bear Stearns relating to discussion of the stock analyst issue," as well as "any message slips, appointment logs, or telephone records that relate to these meetings," limited to records created between August 3, 2001 and May 8, 2002 ("Fourth Request").[5] Id. at ¶ 26. On July 16, 2002, the SEC denied Bloomberg's Fourth Request because it did not have records "of meetings between representatives of these companies and Chairman Pitt." Id. at ¶ 27.

Bloomberg made its fifth request for documents on May 15, 2002, seeking notes "made by Chairman Harvey Pitt or any other commissioners or SEC staff, relating to any meetings or communications between Chairman Pitt and employees of KPMG LLP between Feb. 1, 2002 and May 15, 2002," together with "documents relating to meetings or communications between KPMG employees and SEC Chief of Staff Mark Radke, SEC Chief Accountant Robert Herdman, or the SEC General Counsel (David Becker/Giovanni Prezioso) between May 3, 2002 and May 15, 2002" ("Fifth Request").[6] Id. at ¶ 28. The SEC denied the Fifth Request on July 17, 2002 on the grounds that it did not have any records of such meetings during this period of time. Id. at ¶ 29.

Bloomberg appealed the denial of the Second, Third, Fourth, and Fifth Requests on August 2, 2002 ("Combined Appeal"). Id. at ¶ 30. On September 25, 2002, the SEC affirmed in part and modified in part the initial agency decisions from which Bloomberg appealed. Id. at ¶ 31. The SEC's appeal letter stated that it was not able to locate any documents responsive to the Fifth Request, regarding meetings with KPMG employees. Amend. Compl., Ex. 9. With regard to the Second, Third, and Fourth Requests, the SEC clarified that although it had located several responsive documents, some of the records were "personal records" not subject to FOIA disclosure. Id. at 3. Specifically, the SEC indicated that Chairman Pitt's telephone log, entries in agency staff members' appointment calendars, and staff notes as to agency meet-

4. FOIA Request No. 2002–1861.

5. FOIA Request Nos. 2002–1869 and 2002–1874.

6. FOIA Request No. 2002–1961.

ings were "personal records." *Id.* at 4. The SEC stated in its letter that it had located several responsive documents that could be considered "agency records," but that these records were subject to several FOIA exemptions. *Id.* at 6–7. The SEC advised Bloomberg of its right to seek judicial review of the agency's determination. *Id.* at 9.

Bloomberg sent a sixth FOIA request to the SEC on April 29, 2002, seeking "e-mail communications sent by SEC Chairman Harvey Pitt and/or his top staff members to addresses that end with the following: @who.eop.gov, @ml.com, @aol.com, @andersen.com, @pwcglobal.com, @deloitte.com, @dc.com, @ey.com, @kpmg.com, @nyse.com, microstrategy.com, ms.com, and morganstanley.com" ("Sixth Request"). Amend. Compl. ¶ 34. On July 18, 2002, the SEC sent Bloomberg a letter stating that this request did not reasonably describe the records sought and that the term "top staff" was ambiguous. Def. Stat. of Mat. Facts ¶ 19. The letter also sought additional information regarding Bloomberg's request that the SEC waive applicable fees. *Id.* Bloomberg responded in an August 2, 2002 letter, modifying its request to define "top staff" as Chief of Staff Mark Radke and Deputy Chief of Staff Lisa Panasiti, and withdrawing its fee waiver request. *Id.* at ¶ 20.

Bloomberg filed the present action on August 9, 2002, challenging the SEC's response to its First Request. Compl. ¶¶ 11–21. On September 4, 2002, the SEC requested an extension of time to respond to the Sixth Request until September 18, 2002. Def. Stat. of Mat. Facts ¶ 21. Bloomberg did not respond and on Sep-

tember 18, 2002, the SEC informed Bloomberg that it was still consulting with agency staff regarding information that would be responsive to the request, that it would advise Bloomberg's counsel of its findings as soon as possible, and gave contact information if Bloomberg had any questions in the interim. *Id.* at ¶¶ 21–22.

Subsequent to the filing of this action on August 9, 2002, Bloomberg filed an amended complaint on September 26, 2002, which challenged the SEC's response to the first five requests, and also alleged that the Sixth Request had been constructively denied. On December 20, 2002, the SEC moved for dismissal and summary judgment based on its determination that the thirteen documents it had identified as responsive to the First, Second, Third, and Fourth Requests [7] were either "personal records" not subject to FOIA, or were "agency records" subject to FOIA exemptions to disclosure. Among the documents withheld are Chairman Pitt's calendar, telephone logs, and notes and memoranda of his staff. With regard to the Sixth Request, the SEC contends that this Court lacks subject matter jurisdiction because Bloomberg failed to exhaust its administrative remedies.

Following the denial of its motion to compel discovery regarding the SEC's policy and practices with regard to "personal records" as opposed to "agency records," and the SEC's document retention policies, Bloomberg cross-moved for summary judgment on April 6, 2004, on the grounds that the documents located in response to the First, Second, Third, and Fourth Requests are "agency records" not subject to

---

**7.** In its motion to dismiss and summary judgment filed on December 20, 2002, the SEC stated that it had identified nine documents responsive to the First, Second, Third, and Fourth Requests. The December 20, 2002 motion was accompanied by a *Vaughn* index describing the nine withheld documents. The

SEC subsequently submitted an amended *Vaughn* index on January 3, 2003, which included entries for three additional books of telephone message slips and a carbon copy of a telephone message slip, for a total of thirteen documents.

any exemptions to disclosure and that this Court does indeed have jurisdiction over the Sixth Request under the doctrine of constructive exhaustion.

## *Discussion*

### *I. Standard of Review*

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e)). The Court must view the facts in the light most favorable to the non-movant, giving the non-movant the benefit of all justifiable inferences derived from the evidence in the record. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In a FOIA case, an agency is entitled to summary judgment where it demonstrates that documents are not subject to FOIA's disclosure requirements. *Exxon Corp. v. FTC,* 663 F.2d 120, 126 (D.C.Cir.1980).

The issues before the Court on the parties' cross-motions for summary judgment are threefold. First, the Court must determine whether several of the documents identified by the SEC as responsive to Bloomberg's first five FOIA requests are "agency records" subject to the disclosure requirements under FOIA.[8] Second, with regard to responsive documents that are properly considered "agency records," the Court must evaluate whether such documents are nevertheless protected from disclosure under specific FOIA exemptions. Finally, the Court must determine whether it has jurisdiction over Bloomberg's Sixth Request.

### *II. "Agency Records" Under FOIA*

The SEC withheld ten responsive documents based on its determination that these documents are personal records, and not "agency records" subject to disclosure. Section 552(a)(4)(B) of the Freedom of Information Act provides that "[o]n complaint, the district court...has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Federal jurisdiction under FOIA is thus premised on the requirement that the documents improperly withheld are "agency records." *See Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980); *Bureau of Nat'l Affairs, Inc. v. U.S. Department of Justice,* 742 F.2d 1484, 1488 (D.C.Cir.1984) ("*BNA*"). Neither the express language of the statute nor the legislative history defines the term "agency records." *BNA,* 742 F.2d at 1488. Thus, the D.C. Circuit has focused on several factors in determin-

---

**8.** With regard to the adequacy of the SEC's search, the agency has asserted that it conducted a proper search in response to Bloomberg's request. Def. Stat. of Mat. Facts ¶ 8.

Bloomberg does not challenge the adequacy of the agency's search in its motion for summary judgment.

ing whether a document constitutes an "agency record" subject to FOIA disclosure: (1) the intent of the creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files. *Tax Analysts v. U.S. Department of Justice,* 845 F.2d 1060, 1069 (D.C.Cir. 1988); *see also BNA,* 742 F.2d at 1489–90. The Court must consider whether under the totality of the circumstances, a document can be considered an "agency record." *BNA,* 742 F.2d at 1492–93.

The ten documents withheld by the SEC can be grouped as follows: (1) Chairman Pitt's appointment calendar and calendar entries of his staff members; (2) Chairman Pitt's telephone logs; (3) books of carbon copies of telephone message slips, and an individual carbon copy of a telephone message slip; and (4) notes of Mark Radke, Pitt's Chief of Staff, regarding an April 26, 2002 meeting with Eugene O'Kelly, Chief Executive of KPMG. As each of these categories of documents was created and maintained under varying circumstances, the Court will evaluate each category individually.

A. *Chairman Pitt's Appointment Calendar and Calendar Entries of His Staff*

■ Document 1 in the SEC's amended *Vaughn* index is Chairman Pitt's appointment calendar. The SEC has described this document as a "personal calendar" maintained on the agency computer system that was created for the Chairman's own use, and not to satisfy any agency requirements or to create any official record of his schedule. Def. Stat. of Mat. Facts ¶ 9; Def. Mot to Dismiss or for Summ. J. 10–11. The calendar contains entries listing professional meetings and agency meetings on policy enforcement issues, as well as personal and social meetings and events, medical appointments, and the birthdays of friends and family. Def. Stat. of Mat. Facts. ¶ 9. According to the SEC, only the Chairman and his confidential assistant placed entries in the calendar. The Chairman's Chief of Staff and Deputy Chief of Staff viewed the calendar on occasion to determine the Chairman's availability, but the calendar was not circulated to others at the agency. Def. Stat. of Mat. Facts, Ex. 3, Decl. of Harvey Pitt. ¶ 8; Def. Reply 4. As the calendar was maintained on the agency computer system, it was automatically backed-up every thirty days, just as any other file on the system would be. Def. Reply 5.

It is the SEC's position that Chairman Pitt's calendar is just as personal in nature as the calendar of former Assistant Attorney General William Baxter, the status of which was at issue in the *BNA* case. In *BNA,* our Circuit Court concluded that the Assistant Attorney General's appointment calendar was not an "agency record" because although his immediate staff had access to determine his availability, the calendar was not distributed to agency employees. 742 F.2d at 1496. Moreover, while the calendar contained both business and personal appointments, the calendar in *BNA* was created for the personal convenience of the Assistant Attorney General and was not required to be maintained by the Department of Justice. *Id.* Indeed, the D.C. Circuit contrasted the calendar with daily agendas, which it determined were "agency records," because they were created for the express purpose of facilitating activities within the agency and were circulated to staff for that purpose. *Id.* at 1495.

Bloomberg argues that Chairman Pitt's calendar is an "agency record" subject to FOIA disclosure requirements because un-

der the totality of the circumstances approach set forth in *Tax Analysts* and *BNA*, the calendar was relied on by agency personnel and was integrated into the agency's record system when it was maintained on the computer system and backed-up every thirty-days on the server. Pl. Mot. for Summ. J. 16–18. The Court disagrees and, for the following reasons, finds that Chairman Pitt's calendar is a personal record, much like the Assistant Attorney General's calendar in *BNA*.

First, like the calendar in *BNA*, only Chairman Pitt's personal assistant, his Chief of Staff, and Deputy Chief of Staff accessed the calendar, and then only to determine his availability. Second, as in *BNA*, Chairman Pitt's calendar was created for his own personal use, not for the purpose of creating an official record of his schedule. Furthermore, that the calendar includes both personal and business appointments does not preclude a finding that the document is a personal record. *See BNA*, 742 F.2d at 1495–96. Finally, Bloomberg has argued that because the calendar was maintained on the agency computer system and backed-up every thirty days, the calendar was integrated into the agency record system. However, the SEC has indicated that its employees are permitted "limited use of government office equipment for personal needs[,]" Def. Reply 5 fn. 5, and that its routine computer file maintenance does not distinguish between personal and SEC business-related documents. *Id.* at 5. Moreover, the D.C. Circuit has previously held that "employing agency resources, standing alone, is not sufficient to render a document an 'agency record.'" *Gallant v. NLRB*, 26 F.3d 168, 172 (D.C.Cir.1994). Accordingly, the Court does not find that the fact that the calendar was maintained on the agency computer system establishes that it was integrated into the agency's records.

The Court thus finds that Chairman Pitt's calendar is not an "agency record" subject to the Court's jurisdiction under FOIA. Similarly, the Court finds that the calendars of Consuelo Hitchcock and Lisa Panasiti, Documents 7–8 in the amended *Vaughn* index, which were kept for these employees' personal convenience and were not distributed to any other agency personnel, see Def. Stat. of Mat. Facts ¶¶ 16–17, are not "agency records" for which the Court has jurisdiction under FOIA.

**B. Telephone Log**

■ Chairman Pitt's telephone logs, Document 2 in the SEC's amended *Vaughn* index, have been withheld by the SEC as personal records. According to the SEC, the telephone logs were maintained for the Chairman's personal convenience, "to remind him of calls that had not been returned, or of calls that he wanted to make." Def. Stat. of Mat. Facts ¶ 10. The daily message logs included "numerous records of calls from family members and personal friends on a range of issues unrelated to the business of the [SEC][,]" as well as messages from candidates or applicants for positions at the agency or employees with personnel issues. *Id.* The logs also contained some messages concerning pending agency investigations and policy deliberations. *Id.* The logs were kept by the Chairman's assistant, *id.*, and were not circulated to other individuals in the agency other than the Chairman's Deputy Chief of Staff. Pl. Mot. for Summ. J. 21 (citing SEC interrogatory responses 6, 10). SEC asserts that the telephone logs are personal records because they were in the exclusive control of the Chairman, were not circulated to other agency personnel, and were kept separate from the agency files.

Bloomberg argues that because the logs were maintained in electronic form using

computer hardware and software and were archived every thirty days, they were integrated into the agency record-keeping system. Pl. Mot. for Summ. J. 21. Moreover, Bloomberg asserts that because the logs contain agency-related business and the Chairman's assistant and Deputy Chief of Staff had access to the logs, they are agency records under FOIA. Bloomberg seeks to analogize this case to *Washington Post v. U.S. Department of State,* in which the district court held that former Secretary of State Alexander Haig's "records of schedule" were "agency records" under FOIA. 632 F.Supp. 607, 610, 616 (D.D.C. 1986). The "records of schedule" were typewritten transcriptions of documents compiled on a daily basis by members of Haig's staff, which chronicled his official and unofficial duties. *Id.* at 610. Haig had neither access to the records, nor even knowledge that they were being created. *Id.* The records were kept in the central filing cabinet, which also contained his official daily agenda and was kept separate from Haig's personal files. *Id.* at 610, 613. For the following reasons, the Court finds Bloomberg's arguments unpersuasive, and concludes that, much like Chairman Pitt's calendar, the telephone logs are personal records.

First, the logs were created and maintained to remind him of calls to make or return, and did not serve as an official record of his telephone calls. Second, as was the case with his calendar, only the Chairman's assistant and his two most senior staff had access to the telephone logs. There is no indication that these individuals relied on the telephone log in any significant way in the course of their duties. Third, that the log was maintained electronically on the agency's computer system is not dispositive—as previously noted, the SEC has asserted that it permits some personal use of agency resources and the Court will not find that any document maintained on the computer

system is automatically integrated into the "agency's records system." Finally, the Court disagrees with Bloomberg's analogy to *Washington Post.* The "records of schedule" in that case were not maintained for the official's personal use and were kept with official agency files, separate from personal files. Accordingly, the Court finds that the totality of the circumstances support a finding that Chairman Pitt's telephone logs are personal records that are not subject to the Court's jurisdiction under FOIA.

### C. *Telephone Message Slips*

█ Documents 3, 10, 11, 12, and 13 are four books of carbon copies of telephone message slips and one individual carbon copy of a message slip from Linda Vaughn, Chairman Pitt's assistant. The SEC has withheld these documents as personal records and describes them as logs and messages "maintained for [the Chairman's] personal use and convenience, so that he could ensure that he responded to any call (whether family, social or business related)." Def. Mot. to Dismiss or for Summ. J. 12. The logs were not circulated to other staff members and were not kept in the Chairman's official files, rather were kept by his assistant. *Id.;* Def. Stat. of Mat. Facts ¶ 10. The SEC asserts that these message slips were usually discarded, but that the documents located by the agency were inadvertently retained. Def. Stat. of Mat. Facts. ¶ 11. As the logs and the message slip were not relied upon by other staff members and were not included in agency files, the SEC asserts that they are not agency records subject to disclosure.

Bloomberg argues that the message slips are "agency records" under FOIA because they were created or maintained "entirely with [SEC] resources" and they contained information related to agency business. Pl. Mot. for Summ. J. 21; Pl. Reply 11. Furthermore, Bloomberg ar-

gues that the fact that the General Accounting Office ("GAO") viewed the message slips in the context of an inquiry into "the functioning of the SEC..." also weighs in favor of a finding that the slips are "agency records." Pl. Mot. for Summ. J. 21 n. 13.

The Court finds that both *BNA* and a district court opinion from this Circuit, *Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1 (D.D.C.1995), support a finding that the message slips are not "agency records." In *BNA*, the D.C. Circuit held that telephone message slips of officials of the Office of Management and Budget ("OMB") were not agency records. 742 F.2d at 1495. The message slips were not "agency records" because they contained no substantive information, no one but the official for whom the messages were taken used the slips in any way, and there would be no way for the official to segregate personal calls from business calls. *Id.* Similarly, in *Judicial Watch, Inc. v. Clinton* ("*Clinton*"), the district court held that telephone records intended for personal use, such as message slips, that were not circulated to other employees and not incorporated into the agency recordkeeping system were not "agency records." 880 F.Supp. at 11.[9]

Following the reasoning in these two cases, the Court finds that the books of telephone message slips and the individual message slip are not "agency records." These documents were intended only for Chairman Pitt's personal use and were not circulated to anyone other than him and his assistant, who wrote them. Moreover, they were not kept with any official agency records. Even if, as Bloomberg argues, they contained some substantive information, "the mere fact that the document in question 'relates to' the business of the agency does not by itself render it an agency record." *Clinton*, 880 F.Supp. at 11. Furthermore, the Court rejects Bloomberg's claim that the GAO's review of the message slips necessarily weighs in favor of a finding that the documents are agency records; Bloomberg has neither alleged that *SEC* personnel relied on the documents nor does it claim that the SEC exercised control over the documents to provide to the GAO.[10] In the absence of more detailed allegations regarding the GAO's review that would create a genuine issue of material fact, this fact alone does not render the books of message slips and the individual message slips "agency records" for the purposes of this Court's jurisdiction under FOIA.

D. *Notes of Mark Radke Regarding the April 26, 2002 Meeting with Eugene O'Kelly*

█ The final document withheld by the SEC as a personal record is Document 9 in

---

**9.** Bloomberg cites *Summers v. U.S. Department of Justice*, 934 F.Supp. 458 (D.D.C.1996) for the proposition that courts have reached different conclusions regarding the FOIA status of telephone records. However, *Summers* did not reach the issue of whether the records were "agency records" as opposed to personal records, and instead focused on whether the DOJ had engaged in a proper search for responsive documents and had justified its claim of FOIA exemption.

**10.** The Court also finds that Bloomberg's reliance on the D.C. Circuit's opinion in *United We Stand America, Inc. v. I.R.S.*, 359 F.3d

595, 602–03 (D.C.Cir.2004), to support its contention that documents reviewed by the GAO are "agency records," is misplaced. In that case, the issue before the Circuit was not whether disclosure to another governmental entity demonstrates that a document is not a personal record. Instead, the court was asked to determine whether, given that congressional documents are not subject to FOIA disclosure, a document created at the request of Congress by an agency was a congressional record or an "agency record" that would be subject to disclosure following a FOIA request.

the *Vaughn* index, notes of Mark Radke, Chairman Pitt's Chief of Staff, regarding an April 26, 2002 meeting with Eugene O'Kelly, Chief Executive of KPMG. Radke attests that these were "personal notes" he took during the meeting, and that the notes were not circulated to anyone in the Office of the Chairman or otherwise. Def. Stat. of Mat. Facts, Ex. 4, Decl. of Mark Radke ¶ 3. The notes were kept with his private files in his office and no one else had access to them. *Id.* Radke also attests he "did not rely upon them for any purpose." *Id.* In support of its position that these notes are personal records not subject to disclosure under FOIA, the SEC cites several cases from this district, including *Clinton, AFGE Local 2782 v. U.S. Department of Commerce,* 632 F.Supp. 1272, 1277 (D.D.C.1986), and *Kalmin v. Dep't of the Navy,* 605 F.Supp. 1492, 1494–95 (D.D.C.1985), all of which hold that staff notes were not "agency records."

In response, Bloomberg argues that the notes were created by Radke in the course of his official duties as Chief of Staff and they appear to be "the only record of Chairman Pitt's conversation with the head of [the] accounting firm...," which Bloomberg asserts was the subject of "considerable press coverage." Pl. Mot. for Summ. J. 24. In sum, it is Bloomberg's contention that "disclosure of the notes of Chairman Pitt's meeting with Mr. O'Kelly would undoubtedly serve 'to open agency action to the light of public scrutiny.'" Pl. Mot. for Summ. J. 25.

Bloomberg's arguments regarding the public interest in these notes sidestep the primary issue before the Court—whether such notes are, in fact, "agency records" that are subject to the disclosure requirements of FOIA. The Court concludes that

they are not because they do not meet any of the factors under the D.C. Circuit's multi-factor test. The notes were created for Radke's own personal reference, were not relied upon by other agency personnel, were not incorporated in agency files, and were not under the agency's control. Even Radke apparently did not rely on these notes for any purpose. FOIA does not "sweep into [its] reach personal papers that may 'relate to' an employee's work...but which the individual does not rely upon to perform his or her duties." *Gallant v. NLRB,* 26 F.3d 168, 171–72 (D.C.Cir.1994) (citing *BNA,* 742 F.2d 1484, 1493 (D.C.Cir.1984)). Accordingly, the Court concludes that Mark Radke's notes of the April 26, 2002 are not "agency records" subject to its jurisdiction under FOIA.

### III. Documents Withheld Pursuant to FOIA Exemptions

The SEC withheld the remaining three documents listed in its amended *Vaughn* index, Documents 4–6, based on its determination that these records are subject to two FOIA exemptions, 5 U.S.C. § 552(b)(5) ("Exemption (b)(5)") and 5 U.S.C. § 552(b)(8) ("Exemption (b)(8)").[11] All three documents relate to a November 6, 2001 meeting with officials from the New York Stock Exchange ("NYSE"), National Association of Securities Dealers ("NASD"), and several brokerage houses regarding the regulation of securities analysts. This meeting was arranged by Chairman Pitt so that the participants could report to the SEC on steps they were taking or considering in connection with issues of concern regarding the regulation of securities analysts. Def. Stat. of Mat. Facts, Ex. 1, Decl. of Consuelo Hitch-

---

11. The SEC has also asserted FOIA exemptions with regard to Documents 1–3 and 10–13. *See* SEC Amended *Vaughn* Index. However, the Court has determined that these documents are not "agency records" subject to its jurisdiction and thus will not address these claims.

cock ¶4. Among these issues were the supervision of analysts, potential conflicts of interest for analysts and their firms, the structure of analyst compensation, and the transparency of analysts' reports. *Id.*

Document 5 contains the notes of Mark Radke regarding the meeting, which included the "points that [he] believed were important and most relevant to the Commission's deliberations regarding the regulation of securities analysts." Def. Stat. of Mat. Facts, Ex. 4, Decl. of Mark Radke ¶4. After the meeting, Radke gave his notes to Consuelo Hitchcock, Counsel to Chairman Pitt. Document 6 contains the notes of Consuelo Hitchcock, which also included the points she found to be most important and relevant to the agency's deliberations regarding the regulation of securities analysts. *Id.* at Ex. 1, Decl. of Consuelo Hitchcock ¶7. Hitchcock subsequently wrote a memorandum based on her notes and those of Mark Radke to further describe the specific aspects of the November 6, 2001 and to "assist the Commission's senior staff in their decision-making on how best to address issues regarding the role of securities analysts." *Id.* This memorandum is Document 7 on the SEC's amended *Vaughn* index. The SEC asserts that all three documents regarding this meeting are exempt from disclosure under Exemptions (b)(5) and (b)(8). 5 U.S.C. §§ 552(b)(5), (b)(8).

### A. *Exemption (b)(5)*

█ Exemption (b)(5) exempts from FOIA disclosure requirements "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Under this exemption, documents "that are normally privileged in the civil discovery context" are exempted. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Accordingly, documents that are subject to

the "deliberative process" privilege, which covers deliberations comprising part of a process by which governmental decisions and policies are formulated, are exempt from disclosure under FOIA. *Dep't of the Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866–67 (D.C.Cir.1980). To determine whether a document is protected by the deliberative process privilege, courts in this Circuit have looked to whether the document is "predecisional," *i.e.,* whether it reflects the "give-and-take of the consultative process." *Id.* at 866. Documents such as drafts, recommendations, proposals, and suggestions that reflect the personal opinions of the author rather than the policy of the agency are thus protected under this privilege. *Id.*

█ The SEC asserts that the notes of Mark Radke and Consuelo Hitchcock and Hitchcock's memorandum are subject to the deliberative process privilege because they reflect the authors' impressions of discussions between the SEC and meeting participants regarding "the proper regulatory response to concerns such as the apparent conflicts of interest of securities analysts...including discussions of possible new rules..." Def. Mot. to Dismiss and for Summ. J. 20. Furthermore, the SEC subsequently approved rules to govern analyst conflicts. The agency thus views the three documents summarizing the November 6, 2001 meeting as a "distillation of the important points raised at the meeting, for use in further Commission deliberations and decision-making..." *Id.*

Bloomberg argues that Exemption (b)(5) should only be invoked where disclosure of the records would expose an agency's decision-making process and thereby undermine the agency's ability to perform its functions. Pl. Mot. for Summ. J. 31 (citing

*Evans v. U.S. Office of Personnel Management,* 276 F.Supp.2d 34, 39 (D.D.C.2003)). It further asserts that the deliberative process privilege does not apply to purely factual information and thus the notes and memorandum would not be protected. Finally, Bloomberg argues that if the SEC adopted the recommendations or suggestions contained in the notes and memoranda, these documents would be deprived of their "predecisional" status.

The Court finds that the notes of Mark Radke and Consuelo Hitchcock, as well as the subsequent memorandum drafted by Hitchcock, are subject to Exemption (b)(5). First, the Court finds that exemption in this case is consistent with the policy underlying Exemption (b)(5). The SEC indicated that the purpose of the November 6, 2001 meeting was for the agency to receive information from the NYSE, NASD, and brokerage firms, including "candid critiques of current practices," regarding conflict of interest issues related to securities analysts. The Court finds that it would severely undermine the SEC's ability to address such issues if meeting participants did not feel at liberty to engage in an open discussion with the agency regarding self-regulatory responses and potential rules that might be adopted by the agency. Moreover, it would surely undercut the agency's ability to engage in deliberations regarding potential regulatory responses if the thoughts and recommendations of top staff members in the policy-making process were exposed prior to a final decision.

Second, while courts in this Circuit have previously held that Exemption (b)(5) does not protect records that are "purely factual," the D.C. Circuit has clarified that "[t]o the extent that predecisional materials, even if 'factual' in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5." *Petroleum Information Corp. v. U.S. Dep't of the Interior,* 976 F.2d 1429, 1435 (D.C.Cir.1992). The notes and memoranda for which the SEC has claimed Exemption (b)(5) distill discussions reflecting the impressions of SEC officials regarding potential regulatory responses to analyst issues. Finally, Bloomberg fails to raise any genuine issue of material fact contradicting the SEC's assertion that the documents are "predecisional" because the May 8, 2002 press release announcing new regulations did not adopt the notes or memoranda of Radke and Hitchcock. Accordingly, the Court finds that the SEC has met its burden in demonstrating that these documents are exempted under FOIA.

B. *Exemption (b)(8)*

■ . The SEC also asserts Exemption (b)(8) to withhold the notes and memoranda of Mark Radke and Consuelo Hitchcock. Under 5 U.S.C. § 552(b)(8), "matters...related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions" are exempted from disclosure under FOIA. The SEC withheld Documents 4–6 on the grounds that (1) it is an agency responsible for the regulation and supervision of financial institutions, (2) the participants in the November 6, 2001 meeting, the NYSE, NASD, and several brokerage houses are financial institutions covered under Exemption (b)(8), as set forth in the Government in the Sunshine Act, 5 U.S.C. § 552b, *Jordan v. Dep't of Justice,* 591 F.2d 753, 770 (D.C.Cir.1978), (3) the meeting was held so that these participants could present the agency with reports as to issues related to securities analyst conflicts and possible regulatory responses, and (4) Documents 4–6 relate to these reports. Def. Mot. to Dismiss or for Summ. J. 17–18.

Bloomberg responds that the existence of conflicts of interest among securities analysts "was hardly a confidential matter" at the time of the November 6, 2001 meeting and neither were proposals being recommended to address these conflicts. Pl. Mot. for Summ. J. 26. In support of this argument, Bloomberg cites a Newsday article discussing that two entities who attended the meeting called for new rules restricting analyst conduct. *Id.* at 27. Moreover, Bloomberg contends that under the "bank examination privilege," information that is "simply factual in nature" is not protected and the SEC has not shown that the notes and memoranda contain agency opinions or recommendations. *Id.* at 27. The Court disagrees for several reasons.

First, the purpose of the exemption is to safeguard the public appearance of financial institutions and to ensure that such institutions continue to cooperate with regulatory agencies without fear that their confidential information will be disclosed. *Nat'l Community Reinvestment Coalition v. Nat'l Credit Union Administration,* 290 F.Supp.2d 124, 135–36 (D.D.C.2003). These purposes would undeniably be served by exempting documents summarizing a meeting at which financial institutions were encouraged to engage in a candid assessment of industry problems and discussions regarding potential self-regulatory responses. Indeed, the participants at the meeting were assured that the matters discussed would remain confidential. Def. Stat. of Mat Facts, Ex. 1, Decl. of Consuelo Hitchcock ¶ 4. Absent an indication that the matters discussed at the meeting were not deemed confidential or that the participants subsequently made public the precise issues discussed, the Court finds Bloomberg's arguments regarding the "public" nature of analyst conflicts unpersuasive.

Second, in asserting that the three documents are not protected by the "bank examination privilege," Bloomberg fails to set forth any basis for its analogy with Exemption (b)(8). Indeed, at least one court in this Circuit has held an analysis of bank examination privilege inapposite in a FOIA action involving Exemption (b)(8). *Nat'l Community Reinvestment Coalition v. Nat'l Credit Union Administration,* 290 F.Supp.2d 124, 136 n. 5 (D.D.C.2003). Furthermore, Bloomberg fails to cite any authority from this Circuit identifying a distinction between factual versus analytical or deliberative material under this exemption. Accordingly, the Court finds that the SEC has met its burden in asserting Exemption 8 with regard to Documents 4–6.

## IV. Bloomberg's Sixth Request

■ The final issue before the Court is whether it has jurisdiction over Bloomberg's Sixth Request, which sought e-mails sent by Chairman Pitt's "top staff." As previously noted, under Section 552, federal jurisdiction under FOIA is dependent on a showing that an agency has improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B). Bloomberg's Sixth Request was sent to the SEC on April 29, 2002. After the SEC and Bloomberg exchanged correspondence regarding the scope of the request in July and August 2002, the SEC requested a ten-day extension of time to respond on September 4, 2002. The initial complaint in the current action had already been filed, but did not yet include claims related to the Sixth Request. Bloomberg did not respond to the SEC's request for an extension, and on September 18, 2002, the SEC sent Bloomberg another letter indicating that it needed more time to process the Sixth Request. On September 26, 2002, Bloomberg amended the complaint in this case to include claims regarding the Sixth Request.

The SEC argues that the Court lacks jurisdiction over the Sixth Request because the agency "has not withheld, improperly or otherwise, any documents." Def. Mot. to Dismiss or for Summ. J. 24. Rather, the SEC argues that Bloomberg failed to respond to the agency's request for an extension and its September 18, 2002 letter stating that the agency needed more time to process the request. *Id.*[12] Furthermore, the SEC argues that even if Bloomberg deemed the agency's September 18, 2002 letter to be a denial of its claim, Bloomberg was obligated to appeal this decision to the SEC Office of General Counsel under 5 U.S.C. § 552(a)(6)(A).

Bloomberg responds that the SEC was required to grant or deny the Sixth Request within twenty business days of its receipt by the agency under 5 U.S.C. § 552(a)(6)(A)(i), and that any such determination would have to include the reasons for the decision and notice of the right to appeal. Section 552(a)(6)(C)(i) states that any person making a FOIA request "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions" under the statute. Bloomberg contends that none of the SEC's letters regarding the Sixth Request constituted a substantive response and thus it was under no obligation to pursue an administrative appeal within the agency. Pl. Mot. for Summ. J. 35; Pl.

Reply 2–3. Accordingly, Bloomberg asserts that this Court has jurisdiction over the Sixth Request under the doctrine of "constructive exhaustion."

The Court agrees and thus finds that it has jurisdiction over the Sixth Request under the plain language of Section 552(a)(6)(C)(i) because once the SEC failed to grant or deny Bloomberg's request within the statutory period, Bloomberg was under no obligation to administratively appeal the lack of a decision. *See Judicial Watch, Inc. v. U.S. Department of Energy*, 191 F.Supp.2d 138, 139 (D.D.C. 2002); *Nurse v. Secretary of the Air Force*, 231 F.Supp.2d 323, 328 (D.D.C.2002); *cf. Spannaus v. U.S. Department of Justice*, 824 F.2d 52, 58 (D.C.Cir.1987). Moreover, the D.C. Circuit has held that long delays in producing non-exempt information are sufficient to establish jurisdiction. *See Payne Enters. v. United States*, 837 F.2d 486, 490–92 (D.C.Cir.1988).

Notwithstanding its jurisdiction, however, the facts reflected in the record are insufficient to grant summary judgment for either party on the merits. First, it is unclear whether the SEC declined to expressly grant or deny the Sixth Request due to the timing of the filing of this action (*i.e.*, Bloomberg asserted claims in this case only ten days after receiving the SEC's September 18, 2002 letter), its intention to assert defenses or exemptions at

12. In its reply, the SEC also raises the argument that Bloomberg's Sixth Request is not yet "ripe" because the agency had not yet reported back to Bloomberg on the costs of conducting a search and Bloomberg had not paid any costs. Def. Reply 16–17. The agency cites its own regulation, 17 C.F.R. § 200.80(e)(3) for the proposition that the agency will not do work on a FOIA request that will result in fees beyond a stated limit without further written authorization. *Id.* However, correspondence between the agency and Bloomberg indicates that while Bloomberg had initially requested a fee waiv-er, it subsequently stated that it would withdraw the request if the agency was prepared to make the requested records available. Def. Stat. of Mat. Facts, Ex. C (August 2, 2002 Letter from Bloomberg counsel, Jay Ward Brown, to Barry D. Walters, SEC FOIA/Privacy Officer). As the SEC's subsequent letters do not reference the issues of fees, the status of this issue is unclear from the record. *Id.* at Ex. D, E (Letters dated September 4, 2002 and September 18, 2002 from Ollie R. Wade, SEC FOIA/Privacy Officer to Bloomberg counsel).

some point in the future, or whether it had some other basis for failing to respond in a substantive manner. Second, the SEC asserts that even if this Court has jurisdiction over the Sixth Request, Bloomberg is not entitled to summary judgment as to the Sixth Request because the agency "has not waived substantive objections to producing responsive E-mails." Def. Reply 17. Specifically, the SEC asserts that it must be able to reasonably identify the records being sought for a request to be proper under FOIA. *Id.* at 17, n. 20. Accordingly, the Court will deny both parties' motions for summary judgment as to the Sixth Request and order the SEC to provide Bloomberg with any responsive non-exempt documents (with appropriate explanations as to why any documents are withheld in part or in whole).

### *ORDER*

For the reasons set forth above, it is this 28th day of July, 2004 hereby

**ORDERED** that the defendant's motion to dismiss and for summary judgment [# 14] is **GRANTED** in part; and it is further

**ORDERED** that Documents 1, 2, 3, 7, 8, 9, 10, 11, 12, and 13 in the amended *Vaughn* index are personal records not subject to disclosure and that Documents 4, 5, 6 are exempted from disclosure; and it is further

**ORDERED** that the defendant's motion to dismiss and for summary judgment is **DENIED**, in part, with regard to the Sixth Request (FOIA Request No. 2002–3009); and it is further

**ORDERED** that the plaintiff's motion for summary judgment [# 27] is **DENIED**; and it is further

**ORDERED** that the defendant shall within ninety days of this order produce to the plaintiff any non-exempt responsive documents, with appropriate explanations as to any documents withheld in part or in whole.

**SO ORDERED.**